AMERICAN RAILROAD COMPANY OF PUERTO RICO, peticionaria y apelante, *v.* JUNTA DE SALARIO MÍNIMO DE PUERTO RICO, apelada.

Núm. 105.—*Sometido:* Diciembre 12, 1947. *Resuelto:* Mayo 24, 1948.

*James R. Beverley, R. Castro Fernández, José López Beralt e Iván Reichard*, abogados de la apelante; *Lino J. Saldaña (Ismael Soldevila*, en el alegato), abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Acogiéndose a lo provisto por la sección 24 de la Ley número 8 de 5 de abril de 1941 (págs. 303, 323) según fué enmendada por la Ley número 217 de 11 de mayo de 1945 (págs. 681, 699)(¹) la American Railroad Company of Puerto Rico acudió ante este Tribunal con una solicitud de revisión en que nos pide que dejemos sin efecto el Decreto Mandatorio número 12 dictado por la Junta de Salario Mínimo el 4 de diciembre de 1946. En dicho Decreto se fijan salarios mínimos, períodos máximos de labor y condiciones de trabajo para los empleados del servicio de transporte en Puerto Rico.

Admite la peticionaria que es incuestionable que el Estado puede ejercitar su poder de policía para reglamentar las empresas privadas en aquellas materias que afecten la salud, seguridad, moral y bienestar de sus ciudadanos. Igualmente, que la fijación de salarios mínimos para las in-

---

(¹)La sección 24 de la Ley número 8 de 1941 fué enmendada también por la Ley número 451 de 14 de mayo de 1947 (págs. 951, 969) que empezó a regir en 1 de julio de 1947, pero esta nueva enmienda en nada afecta las cuestiones aquí discutidas.

dustrias cae dentro de ese poder de reglamentación (*police power*). Así lo ha resuelto este Tribunal en los casos de *Escudero* v. *Junta de Salario Mínimo,* 66 D.P.R. 594, en que se interpretó el Decreto Número 10, fijando salarios mínimos para la industria de leche; *Hospital San José* v. *Junta Salario Mínimo,* 63 D.P.R. 747, en que se sostuvo el Decreto Número 4, relacionado con los salarios y condiciones de trabajo en clínicas y hospitales; y *Luce & Co.* v. *Junta Salario Mínimo,* 62 D.P.R. 452, en el cual estuvieron envueltos los Decretos Números 2 y 3 de dicha Junta, en relación con la industria de la caña de azúcar en esta Isla. Pero sostiene ella en primer lugar que la Junta de Salario Mínimo de Puerto Rico se excedió en sus poderes y actuó fuera de ley al aprobar el aludido Decreto Mandatorio en tanto en cuanto fija tipos distintos de salarios mínimos para trabajadores diestros, semidiestros y no diestros, haciendo así una clasificación de seres humanos irrazonable, ilegal e inconstitucional. En la declaración de principios de la referida Ley número 8 de 1941 se hace constar que mediante el ejercicio de la facultad que tiene la Asamblea Legislativa de Puerto Rico para decretar leyes para la protección de la vida, salud y seguridad de empleados y obreros, su política es corregir y tan rápidamente como fuere posible eliminar las condiciones de trabajo perjudiciales a la conservación de las normas de vida necesarias para la salud, la eficiencia y el bienestar general de los trabajadores en las distintas ocupaciones, sin reducir los empleos sustancialmente o la facultad para ganar la vida; que la política pública de esa ley es proteger a los trabajadores en sus medios de vida y procurar garantizarles condiciones favorables a su estabilidad económica y a su natural expansión; y que a tal efecto la Junta de Salario Mínimo por ella creada dará cumplimiento a los propósitos de la ley y fijará salarios tomando en consideración los costes, la situación financiera de las industrias y ramas de la producción, las fluctuaciones del mercado y las condiciones es-

peciales existentes en cada localidad, así como las condiciones de vida y de trabajo de los obreros.

Por su sección 12, según fué enmendada por la Ley número 217 de 11 de mayo de 1945 (pág. 681), se dispone que "La Junta podrá clasificar los trabajos en cualquier industria, negocio u ocupación, de acuerdo con la naturaleza de los servicios a prestar, así como prescribir escalas de salarios mínimos apropiados para distintas clases de trabajo, con el objeto de fijar para cada clasificación el tipo más alto de salario mínimo compatible con los propósitos de esta Ley." Cuando en el Decreto Mandatorio se clasificó a los empleados de la peticionaria en diestros, semidiestros y no diestros y se fijaron para éstos, en las empresas de ferrocarril, salarios por hora de 40, 30 y 25 centavos, respectivamente, no se hizo otra cosa que ceñirse a la letra clara y expresa de la sección 12, clasificando así a los trabajadores en esa industria en armonía con la naturaleza de los servicios a ser prestados por cada obrero y prescribiendo salarios mínimos apropiados a las distintas clases de trabajos por ellos realizados. No hallamos objeción constitucional a una clasificación de los trabajadores como la hecha por la Junta de Salario Mínimo en este caso.

Durante la vista celebrada ante este Tribunal sostuvo además la peticionaria que la clasificación de sus trabajadores en diestros, semidiestros y no diestros, resulta vaga e imprecisa. No estamos de acuerdo. Aunque en el Decreto Número 12 no se definen las palabras diestros y semidiestros, ni la frase no diestros,(2) sin embargo, a la peti-

---

(2) El Decreto Mandatorio Número 12 fué enmendado el 8 de enero de 1948, para regir el primero de febrero de 1948. En el Decreto Enmendado se definen estas palabras y frases del siguiente modo:

"C—*Trabajador diestro* se considerará todo obrero que tenga un pleno conocimiento, comprensión y dominio de la técnica manual y de los procesos envueltos en el desempeño de cualquiera de las ocupaciones generalmente reconocidas como oficios, tales como, sin que se entienda que están limitados a los siguientes: mecánicos, electricistas, carpinteros, talabarteros, herreros, pintores, hojalateros, soldadores, plomeros, torneros y ebanistas. Debe tener habilidad para desempeñar las labores que se le asignen dentro de su oficio, con criterio

cionaria. le será fácil hacer una clasificación de sus emplea-
dos en la forma provista por el Decreto. Así lo demuestra
el testimonio de los señores José P. Gorbea y Ettiene Totti
ante la Junta y el Exhibit FP–10 por ella presentado, en que
se hace un resumen de las horas trabajadas y pagadas du-
rante 52 semanas a empleados diestros, semidiestros y no
diestros. Además, habiéndose definido estas palabras y
frase en el Decreto Enmendado, tal vaguedad o imprecisión,
si la hubo, ha desaparecido, aunque desde luego el Decreto
Enmendado es efectivo tan sólo a partir de febrero 1 de
1948. No ha cometido la Junta el primer error imputádole.

■ Insiste la peticionaria en segundo lugar en que al
aprobar el Decreto Mandatorio número 12 la Junta actuó
en exceso de sus poderes en tanto en cuanto dispuso que
todo empleado tendría derecho a vacaciones con sueldo com-
pleto. El referido Decreto, luego de indicar qué compren-
derá el servicio de transporte y qué se entenderá por pa-
trono y de definir "empleado o trabajador", "por semana"
y "trabajo o labor", y después de fijar salarios mínimos por
hora y las horas regulares y extraordinarias de labor, dis-
pone en su artículo 4 que todo empleado tendrá derecho por
su trabajo en seis días consecutivos o en cuarenta y ocho
horas de cualquier semana, a *un día de descanso;* y que si
el patrono lo hace o le permite trabajar durante ese período

independiente y sin necesidad de que se le instruya en detalle cómo debe hacer
el trabajo, bastando con indicarle la clase de trabajo que se desea realizar.
Debe haber adquirido experiencia previa en las labores que desempeñe.

"D—*Trabajador semidiestro* se considerará todo obrero que, sin tener el
grado de conocimiento, comprensión y dominio de la técnica manual y de los
procesos que se requieren del trabajador diestro para el desempeño de su oficio,
posee sin embargo aquellos conocimientos que le permitan ejecutar bajo super-
visión ciertos trabajos dentro de su oficio. Estarán comprendidos en esta cate-
goría, sin que se entienda como limitación, los auxiliares de los oficios enu-
merados en la definición de trabajador diestro, los engrasadores y los mon-
tadores de gomas (gomeros).

"E—*Trabajador no diestro* se considerará todo obrero que desempeñe labo-
res cuya ejecución no requiera un previo período de adiestramiento. Estarán
comprendidos en esta categoría, sin que se entienda como limitación, los siguien-
tes: peones o trabajadores corrientes, cobradores, lavadores, despachadores (de
aceite, aire, agua y gasolina), serenos, mensajeros y conserjes."

de descanso, le compensará tal labor a razón de no menos del doble del tipo de salario que venga pagándole. También provee en dicho artículo que todo empleado o trabajador tendrá derecho a *vacaciones,* con sueldo completo que se hará efectivo al comenzar a disfrutarlas, a razón de un día por cada cuatro semanas consecutivas en cada una de las cuales haya trabajado más de cuatro días de no menos de seis horas de labor cada uno; que éstas se concederán a solicitud del empleado en forma que no interrumpan la buena marcha del negocio y que las vacaciones podrán acumularse durante dos años. En cuanto al día semanal de descanso provisto por el Decreto no hay controversia de clase alguna en este caso. (Cf. *Compañía Popular de Transporte* v. *Unión de Empleados de Transporte, et al.,* resuelto en mayo 4, 1948.) Respecto a lo que sí hay controversia, según ya hemos visto, es sobre el período de vacaciones. No hemos hallado un solo caso en que por disposición expresa de ley se hayan concedido vacaciones similares a las aquí provistas a empleados u obreros de una industria privada. Véanse, sin embargo, *Compañía Popular de Transporte* v. *Unión de Empleados de Transporte, et al.,* supra, y *People* v. *Ford Motor Company,* 63 N.Y.S.2d 697 (App. Div. S. Ct. N.Y. 1946). No obstante, las vacaciones fijadas, que como hemos visto ascienden a lo sumo a trece días al año, caen dentro del espíritu y propósito que animó al legislador a aprobar la Ley de Salario Mínimo. Ya hemos indicado que éstos son, en esencia, velar por la salud y seguridad de los empleados y obreros y proteger a éstos en sus medios de vida, en tal forma que no se destruyan las fuentes mismas de empleo y trabajo. Los intervalos destinados al reposo son necesarios para evitar el desgaste físico, el agotamiento de las energías, la vejez prematura y las enfermedades del trabajador. Si bien aparentemente al concederlas se perjudica el patrono, a la larga no hay duda de que redundan en beneficio de éste. Mientras

más saludables y fuertes sean los obreros de una industria, mayor será su producción y mejor su labor, menores serán sus ausencias y menor será también el número de accidentes del trabajo. Vacaciones con paga por períodos largos indudablemente redundan en perjuicio de la industria y los negocios. Empero, las aquí concedidas no son irrazonables— 13 días al año. Por otra parte, ese corto período de vacaciones anuales a sus empleados no priva a la peticionaria de su propiedad sin el debido proceso de ley, pues al regresar de ellas a sus faenas, con nuevo entusiasmo y con nuevo vigor, éstos compensarán tal vez con creces todo aquello que dejaron de hacer o producir para su patrono. En cuanto a la peticionaria en sí respecta, la concesión de vacaciones a sus empleados y obreros no es cosa nueva. Las concedidas por el Decreto Número 12 resultan ser, dicho sea de paso, como promedio, menores de las que la propia peticionaria ha venido concediendo a sus empleados. Según el Sr. Totti, ingeniero de la recurrente, las vacaciones concedidas por ésta a los empleados que reciben hasta $11 por semana son de una semana; a los que reciben hasta $18 de dos semanas; a los que reciben hasta $26 de tres semanas y de $26 en adelante de cuatro semanas. Llegamos a la conclusión de que tampoco se ha cometido el segundo error.

 Finalmente alega la peticionaria que al aprobar el referido Decreto la Junta pasó por alto lo provisto por las secciones 1(c), 1(d) y 12 de la Ley de Salario Mínimo, las cuales disponen que la política de la Ley es asegurar el progresivo desenvolvimiento de las industrias que operan en Puerto Rico, procurando garantizarles condiciones favorables a la estabilidad económica y disponiendo que la Junta tomará en consideración la situación económica de la industria y fijará el salario mínimo que pueda pagar ésta sin una rebaja apreciable en los empleos; y que los salarios promulgados a virtud de dicho Decreto son arbitrarios y nulos, ya que no se tomó en consideración las condiciones económi-

cas porque atraviesa el negocio de la peticionaria. Tampoco le asiste la razón a este respecto. La determinación de hechos y la opinión de la Junta, así como el propio Decreto Mandatorio número 12, demuestran de manera palmaria que la Junta tomó en consideración la situación precaria por que atraviesa la recurrente. El comité designado para investigar la industria de transporte en Puerto Rico celebró vistas, al igual que lo hizo la Junta de Salario Mínimo. Tal cual aparece de los autos elevados a este Tribunal la peticionaria comparació a ellas, numerosos testigos desfilaron y la prueba tanto testifical como documental aducida llevó de manera clara y patente al ánimo de la Junta el estado económico de la recurrente. No hay duda de que lo tomó en consideración al dictar el Decreto objeto del recurso. En su Determinación de Hechos la Junta hizo constar que a su juicio los salarios mínimos fijados no afectarían notablemente el nivel financiero de las empresas vistas en conjunto; y al emitir su Decreto se apartó de las recomendaciones del Comité y fijó para la industria de transporte por ferrocarril salarios más bajos que los establecidos para otras ramas de transporte.

En la vista celebrada ante la Junta la peticionaria ofreció abundante prueba con el propósito de demostrar que durante los últimos años su situación económica ha sido difícil, mas cuando se fijan salarios mínimos para una industria, ello se hace tomando en consideración la industria en general y no el estado económico de determinada empresa en particular. *Escudero* v. *Junta de Salario Mínimo,* 66 D.P.R. 594, 596; *Columbus & G.R.R. Co.* v. *Adm'r. of Wage and Hour Div.,* 126 F.2d 136, (CCA, 5to. Circuito, 1942). Los errores tercero y cuarto tampoco han sido cometidos.

*Por las razones expuestas el Decreto Mandatorio número 12 debe ser confirmado, y condenarse a la peticionaria al pago de la suma de $300 por concepto de honorarios de abogado.*

El Juez Asociado Sr. De Jesús no intervino.