ROGELIA CAMPOS DE ENCARNACIÓN, querellante y recurrida, *v.* ALBERTO SEPÚLVEDA, ROSA INÉS ROSA DE SEPÚLVEDA y JOSÉ MELÉNDEZ, ADMOR., h/n/c LICEO DE CAPARRA, querellados y recurrentes.

*Número*: R-64-125     *Resuelto*: 23 de febrero de 1967

*Miguel J. Ríos Lugo,* abogado de los recurrentes; *Ismael Cardona,* abogado de la querellante.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Atendido el propósito reparador de la legislación sobre salario mínimo—el mejoramiento de las condiciones de trabajo para lograr el bienestar general de los trabajadores mediante el aumento de su poder adquisitivo—hemos adoptado como norma la de que en caso de duda sobre si un

decreto es aplicable a determinada clase de empleados no debe prevalecer una interpretación restrictiva que la excluya de la protección que se intenta. *Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, 86 D.P.R. 447, 454 (1962); *Sierra, Comisionado* v. *Llamas*, 73 D.P.R. 908 (1952). Como corolario dijimos en *Sierra Núñez* v. *Const. Equipment Corp.*, 90 D.P.R. 141 (1964), y *Srio. del Trabajo* v. *Cementerio Cat. Porta Coeli*, 92 D.P.R. 527 (1965), que la base principal para fijar salarios mínimos es la naturaleza de la actividad que se lleva a cabo por el empleado que la ejercita, irrespectivamente de la clase de ocupación a que se dedique la empresa o patrono que lo emplea, ratificando así la facultad reconocida al organismo al cual se le encomienda la administración de la política pública para establecer clasificaciones razonables dentro de las distintas industrias. *American R. R. Co.* v. *Junta Salario Mínimo*, 68 D.P.R. 796 (1948); *Sierra, Sec. Trabajo* v. *Bird*, 78 D.P.R. 170 (1955); *Sierra, Com.* v. *San Miguel Fertilizer Corp.*, 73 D.P.R. 341 (1952). Aplicando estos criterios, así como los fundamentos que se deducen de la consideración de la definición de la industria, resolvemos ahora que una persona cuya labor principal era la de aya en un ómnibus escolar está cubierta por las disposiciones del Decreto Mandatorio Núm. 12, para el servicio de transporte, 29 R.&R.P.R. secs. 245n–191 a 197, y del Decreto Mandatorio Núm. 38, para la industria de la transportación en el comercio local, 29 R.&R.P.R. secs. 245n–601 a 606.[1]

---

[1] Para otras aplicaciones del decreto Núm. 12 a actividades específicas, véanse, *Sierra, Sec. Trabajo* v. *Tribl. Superior*, 78 D.P.R. 280 (1955), transportación de enseres agrícolas suministrados por el patrono como refacción a los agricultores; *Caguas Bus Line* v. *Sierra, Comisionado*, 73 D.P.R. 743 (1952), inspectores de salida en una empresa de ómnibus; *Sierra, Comisionado* v. *Morales*, 72 D.P.R. 693 (1951), transportación a distintos clientes de mercancía de un almacén dedicado a ventas al por mayor; *Rodríguez* v. *Fonalledas*, 72 D.P.R. 51 (1951), transportación de leche de la vaquería a los clientes del patrono para ser repartida a domicilio.

El Tribunal Superior, Sala de San Juan, dictó sentencia condenando a los recurrentes Alberto Sepúlveda y Rosa Inés Rosa, quienes tenían establecida una institución de educación primaria con fines lucrativos conocida con el nombre de Liceo de Caparra, a satisfacer a la recurrida Rogelia Campos de Encarnación, la suma de $1,523.38, más una cantidad igual como penalidad, por concepto de (a) media hora extra trabajada durante el período comprendido entre el 7 de septiembre de 1955 y el 30 de mayo de 1961, (b) compensación por vacaciones durante los diez meses escolares, y (c) diferencias entre el sueldo percibido y el salario mínimo provisto en los decretos mencionados.

La querellante y recurrida recibió un sueldo mensual de cincuenta dólares, o sea, aproximadamente treinta y un centavos y cuarto ($0.3125) por hora. Desde el 7 de septiembre de 1955 hasta el 25 de agosto de 1956, fecha en que comenzó a regir el aumento en salario mínimo dispuesto en la Sec. 7 (b) de la Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. sec. 245f, no existe diferencia alguna en el salario ya que el mínimo fijado en el decreto Núm. 12, Art. II (b) (f) 4, era de treinta centavos ($0.30). Desde el 25 de agosto de 1956 hasta el 6 de enero de 1958, (²) en que empiezan a regir las disposiciones sobre salarios del decreto Núm. 38, el mínimo era de treinta y ocho centavos ($0.38) ; el 6 de enero de 1958 hasta el 16 de agosto de 1960, el mínimo era de cuarenta y cinco centavos ($0.45), conforme el Art. IVC (1) (c) del decreto Núm. 38; y del 16 de agosto de 1960 hasta el 30 de mayo de 1961, el mínimo era de cincuenta centavos ($0.50), de acuerdo con el Art. IIC (2) (d) de la primera revisión de dicho decreto. (³)

(²) A pesar de que el decreto Núm. 38 comenzó a regir el 19 de enero de 1958, los salarios mínimos dispuestos en el mismo eran retroactivos al 6 de enero de ese año, por mandato de la Sec. 14 de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 245m.

(³) La segunda revisión del decreto Núm. 38, que comenzó a regir el 23 de septiembre de 1962, fijó un mínimo de sesenta y tres centavos ($0.63) ;

Además, el Art. V (B) del decreto Núm. 12, 29 R.&R.P.R. sec. 245n–195, establecía que todo empleado tenía derecho a vacaciones con sueldo íntegro a razón de un día por cada mes en que hubiera tenido por lo menos cien horas de labor. Este derecho subsiste por mandato expreso de la Sec. 40 (b) de la Ley de Salario Mínimo de 1956, 29 L.P.R.A. sec. 246k. [4]

La función principal de la querellante consistía en recoger los niños por la mañana, antes del comienzo de las clases, velar por la seguridad de éstos al abordar y descender del ómnibus, y acompañarlos durante el trayecto de regreso a sus hogares en las primeras horas de la tarde, una vez finalizada la jornada escolar. Entre ambas actividades permanecía en el plantel. Durante este período se le encomendaban algunas tareas y menesteres; preparaba y servía la merienda a los niños, lo que apenas consumía media hora diaria, recibía el dinero que enviaban los padres para satisfacer la matrícula mensual, ocasionalmente sustituía, aunque no en labores pedagógicas, a los maestros ausentes, contestaba el teléfono y recibía a los visitantes. Una lectura de la transcripción nos deja la impresión de que éste era un período de espera, interrumpido por las labores incidentales a que nos hemos referido. Véanse, *Sucn. Meléndez* v. *Central San Vicente*, 86 D.P.R. 398 (1962), y *Deyá* v. *Otis Elevator Co.*, 91 D.P.R. 669 (1965).

1. Defínese el "servicio de transporte" en el decreto Núm. 12 y la "industria de transportación" en el decreto Núm. 38 como que "comprenderá, sin que ello se entienda como limitación, todo acto, proceso, operación, trabajo o servicio que sea necesario o *incidental* o esté relacionado con la traslación o

---

la tercera revisión que entró en vigor en 29 de mayo de 1965, setenta centavos ($0.70).

[4] "Las disposiciones contenidas en los decretos mandatorios vigentes a la aprobación de esta Ley, que no sean las relativas a salario mínimo, subsistirán en toda su fuerza y vigor a pesar de que la Junta posteriormente, por decreto u orden al efecto, varíe los tipos de salario mínimo."

*conducción de personas* o cosas, desde un sitio a otro, *por o en cualquier clase de vehículo de motor*, incluyendo aquellas que corran por rieles". (Énfasis suplido.) La única exclusión (⁵) que es aquí pertinente es la que se refiere al transporte que se realice por un patrono en vehículos de su propiedad para fines de o en relación con su industria si a ésta le es aplicable (a) algún otro decreto mandatorio, o, (b) una orden de salario federal. Sabido es que la actividad educativa a que se dedicaban los recurrentes no está cubierta ni por decreto ni por orden federal, siendo por tanto inaplicable la exclusión apuntada.

Desde la aprobación del decreto original Núm. 12 existe a los fines de la fijación del salario mínimo la clasificación de ómnibus, que entonces se definía como "un vehículo pesado de motor que actúe como porteador público, con capacidad para más de diez (10) pasajeros, excluyendo al chófer". Al adoptarse en 1958 el decreto Núm. 38 se mantuvo la definición, pero se excluyó el requisito de que se actuara como porteador público. Esta definición se ha conservado hasta el presente.

En la fijación de salarios el decreto Núm. 38 subclasificó los empleados de ómnibus conforme a las zonas en que prestaban servicios (⁶) y a la destreza requerida para el desempeño

---

(⁵)Las otras exclusiones se refieren a (1) las actividades de transportación que se efectúen por agua y aire cubiertas por la Ley Federal de Normas Razonables de Trabajo, según el texto vigente antes de las enmiendas de 5 de mayo de 1961; y (b) antes de la segunda revisión del decreto Núm. 38, al transporte de productos agrícolas de la finca al mercado y de abastos del mercado a la finca que se realizaban por un agricultor en vehículos de su propiedad.

(⁶)La zona primera comprendía las rutas intraurbanas de la Capital servidas por la Autoridad Metropolitana de Autobuses; la segunda, las rutas intraurbanas de Ponce y Mayagüez, la tercera, todas las demás rutas. Actualmente la clasificación se limita a la zona primera, que comprende las rutas servidas o que en el futuro sirviere la Autoridad Metropolitana de Autobuses, y la zona segunda, que cubre todas las demás rutas.

de la labor. (⁷) Es en la primera revisión del decreto Núm. 38 que se hace referencia específica a los ómnibus escolares. Al establecerse el salario mínimo para las empresas de ómnibus de la zona primera se insertó una exclusión que lee "Las empresas de ómnibus escolares que operan en esta zona se entenderán incluidas en la segunda zona". (⁸) El informe del comité designado para investigar la industria explicó esta situación en las siguientes palabras: "Teniendo el Comité conocimiento oficial de que en el área metropolitana (Zona Primera) operan ciertas empresas de ómnibus escolares dedicados a la transportación de estudiantes que son recogidos y llevados a sus propios domicilios y que también transitan en esta zona *guaguas escolares de las cuales son dueños las mismas instituciones pedagógicas que las operan*; y reconociendo el Comité que este servicio necesario de transportación de escolares no presenta las características económicas propias de las empresas de ómnibus dedicadas a la transportación pública de pasajeros, es por eso que ha creído procedente excluir las empresas de ómnibus escolares de la Zona Primera, las cuales deberán entenderse incluidas en la nueva Segunda Zona que se crea".

---

(⁷)En términos generales se dividieron los empleados en chóferes, trabajadores diestros, trabajadores semidiestros y trabajadores no diestros. Para la determinación del salario mínimo aplicable se ha considerado a la demandante en esta última clasificación, y en revisiones posteriores en el grupo de "otros trabajadores", distinguiéndolos de los diestros.

Se considera "trabajador no diestro" a todo obrero que desempeñe labores cuya ejecución no requiere un previo período de adiestramiento, como peones o trabajadores corrientes, cobradores, lavadores, serenos, mensajeros, y otros.

(⁸)La diferencia en el salario fijado para "otros trabajadores" entre los de la zona primera y la zona segunda es apreciable:

| Decreto Núm. 38 | Zona Primera | Zona Segunda |
|---|---|---|
| Primera Revisión (1960) | $0.95 | $0.50 |
| Segunda Revisión (1962) | 1.10 | 0.63 |
| Tercera Revisión (1965) | 1.25 | 0.70 |

En *Srio. del Trabajo* v. *Cementerio Cat. Porta Coeli*, supra, sostuvimos la aplicación del decreto de la industria de la construcción a unos empleados de la empresa recurrente—cuya actividad principal consistía en la operación de un cementerio privado—que se dedicaban a la excavación de fosas, la preparación de las molduras y llenado de éstas con concreto. Y en *Sierra Núñez* v. *Const. Equipment Corp.*, supra, en que se trataba de un chófer de un camión que servía concreto premezclado para construcciones, resolvimos que el mínimo aplicable era el provisto para la industria de la construcción—decreto Núm. 44—y no el fijado para la industria de piedra, vidrio y productos relacionados—decreto Núm. 36.

■ En el presente caso aun cuando la actividad principal de los recurridos no está intervenida por un decreto, la fase de transportación de los estudiantes está cubierta por el relativo a la industria de transportación. Así lo comprueba la relación que hemos hecho precedentemente. Es un caso apropiado para la aplicación de los criterios que señalamos al comienzo de la opinión.

■ 2. Establecido que la labor realizada por la recurrida estaba cubierta por los decretos Núms. 12 y 38, réstanos examinar si la determinación de hecho al efecto de que trabajó media hora extra diaria está sostenida por la preponderancia de la evidencia. El testimonio de la reclamante, único para apoyar tal determinación, es impreciso. Es significativo que cuando ya los recurrentes habían vendido la empresa al señor José D. Meléndez, cursó una carta a éste en la cual admitía que anteriormente, cuando los recurrentes operaban el colegio, a las dos de la tarde estaba de regreso en su hogar, y no a las tres de la tarde como alegó y trató de sostener. (⁹) Por otro lado, su propio testimonio establece

---

(⁹) Confrontada con esta comunicación que contiene una admisión contraria a su interés, intentó explicarla diciendo que así lo hizo constar para lograr una entrevista con el nuevo propietario. Dista mucho de ser convincente.

una discrepancia notable entre el tiempo empleado para recoger los niños y conducirlos a la escuela durante la mañana —no más de setenta y cinco minutos—y para llevarlos al regreso—dos horas y media, sin que ello se explique satisfactoriamente. Es cierto que hemos resuelto que el reclamante no está obligado a probar la realización de la labor adicional con certeza matemática, bastando que demuestre que se realizó el trabajo "si aduce evidencia que demuestre la cuantía y extensión de ese trabajo como inferencia justa y razonable", *Srio. del Trabajo* v. *Vélez*, 86 D.P.R. 585 (1962). No obstante cuando, como en el presente caso, la reclamación se refiere a un período tan corto como media hora diaria, se impone una norma de cautela que requiere un grado de prueba que satisfaga cumplidamente al juzgador. Convenimos con la parte recurrente en que esta certeza no prevalece en el presente caso. ([10])

*Por las razones expuestas se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, para eliminar la suma concedida por horas extras, y así modificada, se confirmará.*

---

([10]) El Art. IVA del decreto Núm. 12, sobre períodos máximos de labor, que permanece en vigor en virtud del Art. 40 la Ley de Salario Mínimo, *supra*, dispone que "Ningún patrono hará o permitirá que el empleado trabaje: (1) más de 8 horas durante cualquier día. (2) más de 48 horas durante cualquier semana, (3) más de 8 horas consecutivas en cualquier período, a menos que le compense la labor realizada durante la novena hora a razón de no menos de dos veces, y la realizada en horas adicionales a la novena, a razón de no menos de vez y media el tipo de salario que el empleado estuviere percibiendo; *Disponiéndose*, que el tiempo inactivo de espera exigido o consentido por el patrono se pagará a tiempo sencillo y cuando el período inactivo de espera es de una hora o más no se considerará para el cómputo de la compensación por horas extraordinarias."

En vista de la conclusión a que hemos llegado no es necesario resolver el planteamiento de los recurrentes sobre la aplicación de este artículo al período de espera de la recurrida. Apuntamos, sin embargo, que esta disposición se incorporó al decreto en 1 de febrero de 1948, antes de la aprobación de la Ley Núm. 379 de 15 de mayo del mismo año, 29 L.P.R.A. secs. 271 *et seq.*, y mientras la norma prevaleciente para el pago de horas extras era *Cardona* v. *Corte*, 62 D.P.R. 61 (1943).