ESPASAS DAIRY, INC., COMPAÑÍA PASTEURIZADORA, INC., SUIZA DAIRY CORPORATION, VAQUERÍA LAS TRES MONJITAS, INC., BORDEN'S PUERTO RICO DAIRY, INC., BORINQUEN DAIRY, INC., CAPARRA DAIRY, INC., recurrentes; BUENA VISTA DAIRY, INC., MANHATTAN DAIRY, INC., MAYAGUEZ DAIRY, INC., WESTERN DAIRY, recurrentes, *v.* JUNTA DE SALARIO MÍNIMO DE PUERTO RICO, recurrida.

*Números:* J.S.M.-65-1; J.S.M.-65-2 *Resueltos:* 20 de junio de 1967

*Enrique Córdova Díaz, Francisco Torres Aguiar, Sarah Torres Peralta, Ginoris Vizcarra y Gustavo A. Del Toro,* abogados de los recurrentes; *Ismael Soldevila* y *Rafael Cabello Ortiz,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 24 de abril de 1965 la Junta de Salario Mínimo promulgó con su aprobación el Decreto Mandatorio Núm. 27 aplicable a la Industria de la Leche y de la Ganadería, Tercera Revisión (1965). En la parte aquí pertinente, el Decreto dispone:

"**Artículo II—Salarios Mínimos**

Todo patrono pagará a sus empleados un salario mínimo no menor del que se dispone a continuación:

| Clasificación y Ocupación | Salario Mínimo |
|---|---|
| **I. Fase Agrícola** | |

. . . . . . . .

**II. Fase Industrial**
 A. Pasterización y Homogenización de Leche

 1. . . . . . . . .

| | **A Base de Salario por Hora o por Unidad el que Resulte Mayor** |
|---|---|
| 2. Chofer-Vendedor | $ 0.95 por hora o $0.0170 (1.70 centavos) por cuartillo vendido en distribución a domicilio y $0.0120 (1.20 centavos) por cuartillo vendido en distribución a negocios. Si el chofer trabajase con un ayudante-vendedor se le pagará $0.95 por hora ó $0.00935 (noventa y tres y medio centé- |

simas de centavo) por cuartillo vendido en distribución a domicilio y $0.0066 (sesenta y seis centésimas de centavo) por cuartillo vendido en distribución a negocios.

3. Ayudante-Vendedor — $0.95 por hora o $0.00765 (setenta y seis y medio centésimas de centavo) por cuartillo vendido en distribución a domicilio y $0.0054 (cincuenta y cuatro centésimas de centavos) por cuartillo vendido en distribución a negocios.

**Artículo III—Definición de Ocupaciones**

I—Fase Industrial—Pasterización y Homogenización de Leche

a. Chofer-Vendedor—empleado que conduce un vehículo de motor y vende y entrega leche a los consumidores en sus hogares o a negocios.

b. Ayudante-Vendedor—empleado que viaja con el chofer-vendedor y vende y entrega leche a los consumidores en sus hogares o a negocios."

En adición a las transcritas disposiciones en cuanto a salario mínimo la Junta anotó en el Decreto que a tenor de la Sec. 40(b) de la Ley Núm. 96 de 1956, todas las disposiciones del Decreto Mandatorio Núm. 18 aplicables a la Industria de la Leche en Puerto Rico, en vigor desde el 1ro. de enero de 1951 que no fueran las relativas a salario mínimo, quedaban vigen-

tes, y pasó a reproducir dichas disposiciones relativas a períodos máximos de labor y condiciones de trabajo.

Las peticionarias interpusieron estos recursos e impugnan ante nos el referido Decreto Mandatorio. Se alega en ambos recursos: (1) Que la adopción del Decreto Mandatorio Núm. 27 por la Junta es contraria a derecho y específicamente en violación de la Ley Núm. 114 de 30 de junio de 1965; (2) Que al adoptarse el Decreto Mandatorio Núm. 27 el Comité y la Junta de Salario Mínimo actuaron sin facultad y en exceso de sus poderes legales al fijarle a los choferes-vendedores y ayudantes-vendedores salarios por hora o pago por comisión en lugar de por comisión solamente, por carecer la Junta de facultad para fijar salario por hora a estos choferes-vendedores y ayudantes-vendedores en vista de la exclusión de éstos de la Ley que fija horas máximas de labor en Puerto Rico; (3) Que siendo los empleados en cuestión verdaderos "vendedores ambulantes" la Junta no puede fijar salarios mínimos a base de horas para ellos; (4) Las peticionarias en el Recurso J.S.M.-65-2 alegan en adición que la Junta actuó en exceso de sus poderes al recomendar salarios y comisiones similares para todo Puerto Rico sin distinguir a base de zonificación entre plantas que operan en la zona metropolitana y aquellas que, como esas peticionarias, operaban fuera de esa zona y específicamente al sur y al oeste de Puerto Rico. En síntesis, atacan la validez del Decreto Mandatorio Núm. 27 en tanto fija a estos empleados compensación mínima a base de hora de trabajo o a base de comisión por unidad, lo que fuere mayor, y no solamente a base de comisión, por carecer la Junta de facultad en ley para fijar la compensación a base de hora.

Veamos la cuestión suscitada. En 5 de marzo de 1965 el Comité que investigó la Industria de la Leche y de la Ganadería sometió a la Junta de Salario Mínimo y fue publicado por ésta, el proyecto de Decreto Mandatorio Núm. 27. En 2 y 5 de abril de 1965 las peticionarias, respectivamente, compa-

recieron ante la Junta y produjeron sus objeciones a la aprobación de dicho proyecto de decreto. Entre otras objeciones, sostuvieron desde un principio que el Comité no tenía facultad para fijar un salario mínimo a base de hora por cuanto estos choferes-vendedores y ayudantes-vendedores se asimilaban a los agentes viajeros y vendedores mencionados en el Art. 19 de la Ley Núm. 379 de 1948 que establece la jornada legal y condiciones de trabajo, y que la propia Ley Núm. 379 excluyó de sus disposiciones. (¹) La Junta desestimó las objeciones y en 20 de abril de 1965 aprobó el Decreto y publicó su aprobación el 24 de abril.

En 3 y 4 de mayo de 1965 las peticionarias solicitaron de la Junta que reconsiderara su aprobación del Decreto. Pendiente de resolverse la reconsideración, en 26 de mayo de 1965 las peticionarias (J.S.M. Núm. 1) comparecieron ante la Junta y llamaron la atención al hecho de que en 10 de marzo de 1965 se había presentado en la Cámara de Representantes el Proyecto de Ley Núm. 135 que excluía a los choferes-vendedores y ayudantes-vendedores objeto del Decreto de la aplicación de las leyes y decretos sobre horas máximas de trabajo. Que dicho proyecto había sido aprobado en ambas Cámaras y estaba pendiente de la firma del Gobernador. En 14 de julio de 1965 las mismas peticionarias informaron a la Junta que el Gobernador había firmado el Proyecto de la Cámara Núm. 135 convirtiéndose en la Ley Núm. 114 de 1965. Pidieron a la Junta que devolviera el Decreto al Comité para que lo considerara a la luz de la Ley Núm. 114. La Junta, en 10 de septiembre de 1965, declaró sin lugar las mociones de

---

(¹) Aparentemente las peticionarias perdían de vista el hecho que distinto a los Comités de Salario Mínimo bajo la Ley de Salario Mínimo de 1941, los Comités y la Junta bajo la Ley de Salario Mínimo de 1956 nada tienen que ver con jornadas de labor y otras condiciones de trabajo. Si bien es cierto que en el Decreto Mandatorio Núm. 27 se reproducen disposiciones en cuanto a condiciones de trabajo, ello fue en virtud de decretos mandatorios promulgados bajo la Ley de 1941 que la Ley de 1956 dejó subsistentes.

reconsideración de las peticionarias y dejó en toda su fuerza y vigor el Decreto Mandatorio Núm. 27. Las peticionarias entonces nos pidieron revisión.

Se expone en la Declaración de Principios de la Ley de Salario Mínimo de Puerto Rico—Ley Núm. 96 de 26 de junio de 1956, Sec. 1—que es la política de la Asamblea Legislativa que los procedimientos que autoriza dicha Ley para la fijación y revisión de salarios mínimos sean conducidos en forma *cuasi legislativa*, y todo decreto aprobado por la Junta rige por sí mismo con fuerza de ley.—Sec. 13 (c) —. Dispone la Sec. 29 que las *conclusiones de hecho* a que llegue un Comité de Salario Mínimo, actuando dentro de sus poderes, serán *concluyentes* en ausencia de fraude. Este Tribunal puede anular o devolver un decreto a la Junta sólo por el fundamento de que el Comité de Salario Mínimo actuó sin facultad o en exceso de sus poderes, o porque la Junta actuó sin facultad o en exceso de sus poderes, o porque el decreto se obtuvo mediante *fraude*.

Las anteriores expresiones del Legislador constituyen guías a ser tenidas en cuenta en el ejercicio de nuestra función revisora en este tipo de recursos.

■ Nada hay en la Ley de Salario Mínimo de 1956 que le niegue poder a un Comité o a la Junta para fijar un salario mínimo tomando como base una hora de trabajo como unidad de medida, en cualquier industria o actividad y respecto a cualquier empleado u ocupación. Por el contrario, la hora de trabajo ha sido siempre la medida básica por excelencia en toda nuestra legislación laboral fijadora de salarios. Aun cuando no hubiera sido así históricamente, basta la propia Ley Núm. 96, que no usa otra norma para fijar los salarios mínimos que ella fija sino la hora de labor.

Sabedora la Legislatura, no obstante, que podrían surgir situaciones especiales que ameritaran tratamiento distinto, concedió a los Comités en la Sec. 16 de la Ley amplia dis-

creción para lidiar con tales situaciones. Así, por ejemplo, dio discreción a los Comités para clasificar el trabajo de acuerdo con la naturaleza del servicio a prestarse; para hacer clasificaciones para distintas clases de trabajo; recomendar salarios diferentes para distintas zonas o regiones o para varias categorías o clases de la misma industria si tal diferenciación la creyere el Comité aconsejable debido a condiciones existentes. Dispone expresamente esta Sec. 16 que en la recolección del fruto de la fase agrícola de la industria cafetalera y en el cosido de hojas de la industria tabacalera, *así como en cualquier otra actividad económica*, los Comités podrán recomendar y la Junta fijar salarios mínimos *por unidades de trabajo* en vez de tipos de salarios *por hora* o *alternativamente*, cuando así lo creyeren aconsejable por la naturaleza de las labores a realizarse.

Acorde con lo anterior, al fijar el salario de estos choferes-vendedores y ayudantes-vendedores en la alternativa a base de hora o a base de comisión por unidad de venta, lo que fuere mayor, posiblemente el Comité consideró, y en uso de su amplia facultad discrecional entendió y aplicó el remedio adecuado, que de fijar el salario sólo por hora podría resultar injusto para el patrono, ya que en una hora el chofer podría vender un litro de leche, y consideró igualmente que de fijarlo sólo a base de comisión por unidad podría ser adverso al empleado, si por razones ajenas a su voluntad como problemas de tránsito, rotura del vehículo, o algo por el estilo, en toda una jornada no pudiera entregar un número sustancial de litros.

■ Por lo anteriormente expuesto, queda demostrado más allá de toda duda, siquiera remota, que el Comité y la Junta de Salario Mínimo tenían en este caso plena facultad para fijar en el Decreto Mandatorio Núm. 27 una compensación mínima de estos empleados a base de hora de labor o a base de comisión por unidad, lo que de ambas cosas

produjere un salario mínimo mayor. El Decreto Mandatorio Núm. 27, a la luz de esa impugnación, es enteramente válido. (²)

Réstanos entonces considerar si la Ley Núm. 114 de 30 de junio de 1965 alteró el poder del Comité y de la Junta para fijar la compensación mínima en la forma expresada o desposeyó al Comité y a la Junta de la facultad legal que tenían para así hacerlo.

La Ley Núm. 114 habla por sí misma. Expresa en su texto de manera clara y precisa su propósito y las razones que tuvo el Legislador para adoptarla. Su título es "Para decretar la no aplicabilidad de las leyes y decretos *sobre horas máximas de trabajo* a los vendedores y ayudantes de vendedores de la leche fresca y otros productos lácteos vendidos por dichos vendedores y ayudantes de vendedores; . . ." (Énfasis suplido.) En su Exposición de Motivos se hace constar que en la industria de la leche de Puerto Rico tradicionalmente se han utilizado vendedores y ayudantes de vendedores para vender y distribuir la leche fresca; que estos vendedores y ayudantes realizan sus labores sin supervisión directa, sin que el patrono pueda gobernar o constatar las horas que efectivamente trabajan; que son ellos los únicos que conocen la clientela y toman la acción que a su juicio es apropiada para mantenerla y aumentarla; que prestan sus servicios fuera de las plantas de leche y regresan a las plantas a los solos fines de entregar la propiedad y cuadrar las cuentas y que como cuestión de hecho son *verdaderos vendedores ambulantes.* Sigue expresando la Exposición de Motivos de la Ley Núm. 114 que ha surgido duda en cuanto a si estos empleados

---

(²) Concluyó la Junta a base de la evidencia en los autos, que siete de las empresas peticionarias utilizaban el sistema de pago a base de unidad, cuatro de ellas pagaban a base de hora y una utilizaba contratistas independientes para la distribución. Seis de las peticionarias tenían convenios colectivos con los trabajadores y cinco de éstas pagaban a base de unidades entregadas, variando el tipo de pago según que la leche fuera distribuida a domicilios o a negocios.

están o no cubiertos por la exención de vendedores viajantes que han establecido nuestras leyes en relación con los *períodos máximos de labor* diaria o semanal. (³) Que esta duda ha causado un estado de incertidumbre en la industria y ante la posibilidad de reclamaciones futuras por concepto de *horas extraordinarias de labor* y amenaza de estabilidad de la propia industria resulta deseable que se aclare debidamente cualquier duda en cuanto a la aplicabilidad de las leyes y decretos sobre *períodos máximos de labor* a los mencionados vendedores y ayudantes de vendedores. Que no obstante, es de rigor garantizarle a esos vendedores una remuneración adecuada a base de comisiones mínimas a ser fijadas por la Junta de Salario Mínimo; y que también deberán asegurárseles los derechos que hasta hoy han venido disfrutando en cuanto a vacaciones, séptimo día de descanso, licencias por enfermedad, y las otras condiciones de trabajo garantizadas a los demás empleados de la industria de la leche.

Siguiendo a tal Exposición de Motivos dispone la Ley Núm. 114 en su Art. 1 que las leyes y decretos estableciendo los *períodos máximos de labor* a ser trabajados por cualquier empleado en la industria de la leche y de la ganadería o que en cualquier forma reglamenten las *horas máximas de labor* de los empleados de dichas industrias, no serán aplicables a los vendedores y ayudantes de vendedores de leche fresca y de otros productos lácteos vendidos por los mismos. Lo que dispuso este Art. 1 en efecto es que estos empleados quedan fuera de la protección en cuanto a la jornada máxima de labor que concede la Ley Núm. 379 de 1948. En otras palabras, que estos vendedores y ayudantes de vendedores de leche fresca y otros productos lácteos podrían trabajar en exceso de las 8 horas de jornada máxima que fija esta Ley sin la obligación de pagarles la compensa-

---

(³) La referencia es a la Ley Núm. 379 de 1948 sobre jornada de trabajo, particularmente en su Art. 19.

ción doble por hora que fija dicho estatuto sujeto, por supuesto, a la garantía que les ofrece la Sec. 16 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico de una compensación extra de por lo menos una vez y media el tipo del salario ordinario por labor realizada en exceso de 8 horas.

El Art. 2 de la Ley Núm. 114 dispone que los Comités de Salario Mínimo *podrán* recomendar, y la Junta de Salario Mínimo *podrá* aprobar, en los decretos aplicables a la industria lechera, comisiones mínimas a ser pagadas a los vendedores y sus ayudantes, de leche fresca y otros productos lácteos. Habría que forzar deliberadamente el texto de dicho Art. 2 y, lo que es más aún, la razón de ser del estatuto, para concluir que el mismo privó al Comité y a la Junta de la facultad que tenían, concedídales ya por la Ley de Salario Mínimo, para fijar salarios mínimos a estos empleados, a base de hora de labor. Bajo conocidas normas de hermenéutica, términos permisibles en un estatuto como "podrá" a veces cabe interpretarlos mandatoriamente, pero de ordinario ello es así cuando el fin o propósito principal del estatuto es que se haga aquello que permite. En todo caso, el Comité fijó salarios también a base de comisiones. El fin o propósito principal de la Ley Núm. 114 no es conceder poder a los Comités y a la Junta de Salario Mínimo para que puedan fijar compensación a base de comisiones a estos empleados. No era necesaria la Ley Núm. 114 para ello porque ya tenían plenamente ese poder en virtud de la propia Ley de Salario Mínimo Núm. 96, particularmente su Sec. 16 a la que nos referimos antes. El fin primordial de la Ley Núm. 114 fue el sacar a estos empleados de la protección que concede la Ley Núm. 379 de 1948 sobre *jornada máxima de labor* por las razones que el propio Legislador expresó:— la dificultad del patrono de supervisar debidamente el tra-

bajo de dichos empleados realizado fuera de la planta. La posición asumida por las peticionarias al efecto de que el Decreto Mandatorio Núm. 27 choca y resulta ser contradictorio con la Ley Núm. 114 de 1965 es, pues, insostenible. Ya observamos al principio que los Comités y la Junta de Salario Mínimo bajo la Ley Núm. 96 de 1956 nada tienen que ver ni tienen función alguna a ejercer en lo que concierne a *jornada* y otras condiciones de trabajo. A la luz de este segundo planteamiento ratificamos igualmente la validez del Decreto.

 Las peticionarias en el Recurso J.S.M.-65-2 levantan el punto adicional de que el Decreto no es válido porque al fijar el salario mínimo de estos empleados no diferenció entre plantas que operan en la zona metropolitana y otras que, como ellas, operan en otros puntos de la Isla, particularmente en las zonas sur y oeste de Puerto Rico. En su alegato en los méritos las peticionarias de hecho abandonaron esta impugnación al no creer necesario discutirla por entender que el Decreto Mandatorio se anularía a la luz de las otras impugnaciones. A pesar de ello y para no dejar una nebulosa sobre el asunto, diremos que la Sec. 16 de la Ley de Salario Mínimo concede al Comité y a la Junta la facultad de hacer esas diferenciaciones por razón de zonas cuando a su juicio tal distinción pueda ser aconsejable debido a las condiciones existentes entre las zonas o regiones y siempre que tal acción no conceda ventajas de competencia a otras zonas o regiones. En los Comités de Salario Mínimo están representados los intereses patronales, del obrero y del público. Si en este caso el Comité no creyó propio hacer uso de esa facultad y establecer un salario distinto para las empresas metropolitanas y para las que operan en otros sectores de la Isla, posiblemente entendió que no era aconsejable o justificable a la luz de los hechos hacer tal diferenciación. Sobre el ejercicio o

no de esos criterios este Tribunal no tiene poder revisor alguno.

*Por los fundamentos expresados se dictará sentencia disponiendo que el Decreto Mandatorio Núm. 27 aplicable a la Industria de la Leche y de la Ganadería, Tercera Revisión (1965) es válido y se confirma el mismo.*

El Juez Asociado Señor Blanco Lugo disintió en opinión separada en la cual concurren los Jueces Asociados Señores Pérez Pimentel, Rigau y Ramírez Bages.

—O—

Opinión disidente del Juez Asociado Señor Blanco Lugo en la cual concurrente los Jueces Asociados Señores Pérez Pimentel, Rigau y Ramírez Bages.

San Juan, Puerto Rico, a 20 de junio de 1967

## I

No es hasta la aprobación en 20 de abril de 1965 de la tercera revisión del Decreto Mandatorio Núm. 27 para la Industria de la Leche y de la Ganadería, 29 R.&R.P.R. secs. 245n–491 *et seq.*, que la Junta de Salario Mínimo de Puerto Rico fijó una compensación alternativa a los choferes vendedores y ayudantes vendedores de salario por hora o por unidad a base de una comisión por el número de cuartillos de leche vendidos en distribución a domicilio o a negocios. Tanto bajo el decreto original Núm. 18, aprobado en 27 de noviembre de 1950, 29 R.&R.P.R. secs. 245n–311 *et seq.*, como bajo el Núm. 27 de 5 de julio de 1957, y en su primera y segunda revisiones de 23 de marzo de 1960 y 19 de abril de 1962 respectivamente, la fijación de compensación para dichos empleados se había hecho exclusivamente a base de

salario por hora. (¹) Todos estos decretos contenían disposiciones sobre condiciones de trabajo relacionadas con períodos máximos de labor, día semanal de descanso, vacaciones, licencia por enfermedad y otros.

De especial interés es la disposición sobre períodos máximos de labor—no hace más que reiterar lo ya estatuido en el Art. 4 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 273—al efecto de que "Ningún patrono empleará a trabajador alguno en la fase agrícola o en la fase industrial de la industria de la leche por más de 8 horas en cualquier día ni por más de 48 en cualquier semana a menos que le pague al trabajador por su labor en exceso de 8 horas diarias ó 48 semanales a razón de por lo menos dos veces el tipo de salario que dicho trabajador estuviere percibiendo". Conforme a la Sec. 40 (b) de la Ley de Salario Mínimo de 1956, 29 L.P.R.A. sec. 246k, esta disposición, así como todas las demás a que hemos hecho referencia, subsistían en toda su fuerza y vigor a pesar de que la Junta posteriormente variase los tipos de salario mínimo. *Campos de Encarnación* v. *Sepúlveda*, 94 D.P.R. 74 (1967); *Martín Santos* v. *C.R.U.V.*, 89 D.P.R. 175 (1963).

La Ley Núm. 114 de 30 de junio de 1965 (Leyes, pág. 337), 5 L.P.R.A. sec. 1120 (Supl. 1966, págs. 86–87), fue aprobada con el propósito, según reza su título, de decretar "la no aplicabilidad de las leyes y *decretos* sobre horas máximas de trabajo a los vendedores y ayudantes de vendedores de leche fresca . . . autorizar a los Comités de la Industria de la Leche y de la Ganadería a recomendar y a la Junta de

---

(¹)

| | Salario por Hora | |
| --- | --- | --- |
| | Zona I | Zona II |
| Decreto Núm. 18 | $0.35 | $0.30 |
| Decreto Núm. 27 | $0.60 | |
| Primera Revisión (1960) | 0.65 | |
| Segunda Revisión (1962) | 0.74 | |

Salario Mínimo a aprobar comisiones mínimas para dichos empleados, . . . garantizar a los vendedores y ayudantes de vendedores un séptimo día de descanso, vacaciones, licencia por enfermedad y otras condiciones de trabajo garantizadas a los demás trabajadores de la Industria de la Leche y de la Ganadería".

Es de rigor transcribir íntegramente la Exposición de Motivos de esta Ley:

"En la industria de la leche de Puerto Rico tradicionalmente se han utilizado vendedores y vendedores ayudantes para vender y distribuir la leche fresca y otros productos lácteos vendidos por dichos vendedores y ayudantes de vendedores. Estos vendedores y ayudantes de vendedores realizan sus labores sin supervisión directa, sin que el patrono pueda gobernar o constatar las horas que efectivamente trabajan; son ellos los que venden el producto, proveen el servicio y la atención, y toman la acción que a su juicio deben tomar para mantener y aumentar su clientela, siendo los únicos que verdaderamente conocen dicha clientela; prestan sus servicios fuera de las plantas de leche; regresan a las plantas de leche a los solos fines de entregar la propiedad y cuadrar las cuentas de la leche y otros productos lácteos vendidos, siendo, como cuestión de hecho, verdaderos vendedores ambulantes.

"Tradicionalmente, los vendedores y ayudantes de vendedores han venido siendo compensados a base de una comisión por cada litro de leche vendido independientemente de las horas trabajadas, sistema de compensación que ha resultado justo y razonable y ha recibido la aprobación de dichos vendedores y ayudantes de vendedores. Ha surgido, sin embargo, alguna duda en cuanto a si los mismos están o no cubiertos por la exención de vendedores viajantes que han establecido nuestras leyes en relación con los períodos máximos de labor diarios o semanales. Esta duda ha causado un estado de incertidumbre en la industria de la leche y de la ganadería ante la posibilidad de reclamaciones futuras por concepto de horas extraordinarias de labor y amenaza de estabilidad de la propia industria y de las mejores relaciones obrero-patronales. Resulta, pues, deseable, para que no se detenga el crecimiento y expansión de la industria de la

leche y de la ganadería, que se aclare debidamente cualquier duda que pudiera existir en cuanto a la aplicabilidad de las leyes y decretos sobre períodos máximos de labor a los mencionados vendedores y ayudantes de vendedores.

"Es de rigor, sin embargo, garantizarle a esos vendedores una remuneración adecuada a base de comisiones mínimas a ser fijadas por la Junta de Salario Mínimo, previa recomendación de los Comités que sean designados fijar el salario mínimo a pagarse en la industria de la leche. También deben asegurárseles los derechos que hasta hoy han venido disfrutando en cuanto a vacaciones, séptimo día de descanso, licencia por enfermedad, y las otras condiciones de trabajo que les están garantizadas a los demás empleados de la industria de la leche y de la ganadería."

Con este historial en mente, ¿cuál fue el verdadero propósito de la Asamblea Legislativa al aprobar la Ley Núm. 114?

## II

La opinión de mayoría sostiene la actuación de la Junta al fijar la compensación alternativa fundándose en que: (a) no puede afirmarse que la intención legislativa al aprobar la Ley Núm. 114 fuera concederle a dicho organismo la facultad de fijar salarios por comisión ya que la Sec. 16 de la Ley de Salario Mínimo desde 1964 autorizaba la fijación de salarios mínimos por unidades de trabajo en lugar de tipos de salarios por hora o alternativamente en *cualquier actividad económica;* (²) (b) el único efecto de la citada ley es que los

---

(²) La Sec. 13 de la Ley de Salario Mínimo de 1941, 29 L.P.R.A. sec. 224, autorizaba expresamente la fijación de salarios por unidades de trabajo, pero al aprobarse la ley de 1956 se omitió una disposición similar. Es en 1959, por la Ley Núm. 4 de 8 de mayo (Leyes, pág. 16), que específicamente se incorpora una disposición al efecto pero limitada a la recolección de café en la fase agrícola de la industria cafetalera; mediante la Ley Núm. 49 de 6 de junio de 1963 (Leyes, pág. 80), se incluyó además el cosido de hojas en la industria tabacalera; y, finalmente, por la Ley Núm. 105 de 26 de junio de 1964 (Leyes, pág. 345), se extiende tal fa-

empleados a que se refiere quedan fuera de la protección que en cuanto a la jornada máxima de labor concede la Ley Núm. 379, *supra*, pero específicamente afirma que podrían trabajar más de ocho horas diarias y más de cuarenta y ocho a la semana recibiendo sólo compensación a tiempo y medio por esas horas extras, conforme al mandato constitucional, Art. II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico.

La lectura de la Ley Núm. 114 y el efecto de todas sus disposiciones, analizadas en conjunto y separadamente, me llevan a una conclusión contraria. Veamos. Dicha ley se propone declarar la inaplicabilidad de las leyes—obviamente la Ley Núm. 379—y decretos sobre horas máximas de labor a los vendedores y ayudantes de vendedores. Es cierto que no se hace referencia expresa a la inaplicabilidad de la Ley de Salario Mínimo en el aspecto de fijación de salarios. Pero ello era innecesario en vista de que (1) hasta entonces según surge del historial anterior, los salarios se venían fijando por hora y atado en el propio decreto con la garantía de paga doble; (2) desde 1954 la función de la Junta se limita a la fijación de salarios mínimos y ninguna intervención tiene en cuanto a la formulación de otras condiciones de trabajo, entre ellas la de la jornada máxima, *Marrero Cabrera* v. *Caribbean Refining Co.*, 93 D.P.R. 250 (1966). Es por eso—al excluirlos también de la fijación de salarios por hora—que se hace necesario expresar que "Es de rigor, *sin embargo*, garantizarle una remuneración adecuada a base de comisiones mínimas a ser fijadas por la Junta de Salario Mínimo". ¿Qué necesidad había de reiterar una facultad que admitidamente tenía

---

cultad a "cualquier otra actividad económica". *Diario de Sesiones,* vol. 18, pág. 1790.

Es significativo que hasta esta última ley de 1964 la fijación de salarios no se autorizaba en forma alternativa, sino que cuando por la naturaleza de las labores a realizarse ello era aconsejable los Comités podían fijar salarios mínimos por unidades de trabajo *en vez* de tipos de salario por hora.

la Junta? La única explicación lógica es que se les había excluido de la fijación de salarios por hora. Obsérvese igualmente que la facultad para fijar salarios por comisión está precedida por la frase adverbial *sin embargo*, queriendo signicar que no se vedaba la acción de la Junta totalmente, sino limitada a esa forma específica que se autorizaba. Por otro lado, la ley pronuncia que *"También* deben asegurárseles los derechos que *hasta hoy* han venido disfrutando en cuanto a vacaciones, séptimo día de descanso, licencia por enfermedad y las otras condiciones de trabajo que les están garantizadas a los demás empleados de la industria de la leche . . .". Nuevamente, la única explicación lógica es que se les excluyó del ámbito de la actuación de la Junta al incorporar como parte de los decretos, conforme a la Sec. 40(b), 29 L.P.R.A. sec. 246k, condiciones de trabajo relativas a vacaciones y licencias por enfermedad. Todo esto demuestra que el único propósito no puede haber sido, como se indica en la opinión de mayoría, el de excluir estos empleados de la disposición sobre horas extras.

Ante el mandato constitucional ya citado, (³) *A. D. Miranda, Inc.* v. *Falcón*, 83 D.P.R. 735 (1961); cf. *Autoridad de Comunicaciones* v. *Tribl. Superior*, (en reconsideración), 87 D.P.R. 1 (1963), y obviamente para conciliarlo con sus disposiciones, la opinión de mayoría se ve obligada a reconocer que cuando los choferes vendedores y los ayudantes vendedores trabajen a base de un salario por hora tendrán derecho a percibir por las horas extras cuando menos a razón de tiempo y medio el tipo regular. *Esta posición frustra a todas luces uno de los anunciados propósitos legislativos al probar la Ley Núm. 114*, a saber, *que estos empleados no*

---

(³) "Se reconoce el derecho de todo trabajador . . . a una jornada que no exceda de ocho horas de trabajo. Sólo podrán trabajar en exceso de este límite diario, mediante compensación extraordinaria que *nunca* será menor de una vez y media el tipo de salarios ordinarios, según se disponga por ley."

*estuvieran sujetos a las leyes sobre horas máximas de labor* y su consecuencia de paga a tipo superior cuando se trabaje en exceso de la jornada legal. Precisamente, consciente de la limitación constitucional, el legislador proveyó la única forma en que podía lograrse su propósito: el pago de salario a base de comisión. En esta forma se garantizaba la protección de estos obreros mediante la intervención del organismo oficial en la fijación de sus salarios, pero a base de comisión únicamente.

Por haber actuado en exceso de su facultad legal anularía la parte del decreto de la Junta de Salario Mínimo que fija un salario por hora a los choferes vendedores y ayudantes vendedores en la fase de distribución de la industria de la leche. (⁴)

---

(⁴) Me doy perfecta cuenta de que los vendedores a comisión que se dedican a abrir rutas pueden resultar perjudicados con la fijación de un salario a comisión únicamente. Sin embargo, nada impide que por la vía de la negociación colectiva o en el decreto mismo se incorpore para estos casos una disposición garantizando una compensación mínima irrespectivamente del número de cuartillos de leche distribuida. En la vista oral celebrada los representantes de las empresas así lo aceptaron y sugirieron que se devolviera el caso a la Junta con instrucciones para que lo refirieran al Comité a los fines de que hicieran una determinación al efecto.