Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| JOSÉ ALBERTO TORRES MONLLOR, MILDRED REMEDIOS CARBONE Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados<br><br>V.<br><br>GUILLERMO RAPHAEL PARRILLA VÉLEZ Y MARÍA VANESSA YRIARTE PÉREZ, XYZ<br><br>Apelantes | KLAN202201053 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Civil Núm.: SJ2021CV04410 Consolidado SJ2021CV04802 (Sala 504)<br><br>Sobre: Cumplimiento Específico de Contrato de Opción y Urgente Solicitud de Remedios Provisionales |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece el Sr. Guillermo Raphael Parrilla Vélez y la Sra. María Vanessa Yriarte Pérez (en adelante, matrimonio Parrilla-Yriarte o parte apelante) mediante el presente recurso de *Apelación* y nos solicitan que revoquemos la *Sentencia Parcial* dictada y notificada el 22 de noviembre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada el 26 de octubre de 2021 por el matrimonio Parrilla-Yriarte, y Ha Lugar la *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial* presentada el 17 de noviembre de 2021 por el Sr. José Alberto Torres Monllor y la

Número Identificador

SEN2023_____

Sra. Mildred Remedios Carbone (en adelante, matrimonio Torres-Remedios o parte apelada).

Por los fundamentos que expondremos, se confirma la *Sentencia Parcial* apelada.

**-I-**

El 14 de julio de 2021, el matrimonio Torres-Remedios presentó *Demanda Jurada y Solicitud Urgente de Orden Ex Parte de Prohibición de Enajenar y Solicitud de No Hacer* sobre cumplimiento específico de contrato de opción y urgente solicitud de remedios provisionales en contra del matrimonio Parrilla-Yriarte.[1] Alegó que el 26 de julio de 2020, las partes suscribieron un contrato titulado *Contrato de Arrendamiento con Opción de Compraventa* (en adelante, Contrato de Opción) en virtud del cual el matrimonio Parrilla-Yriarte le concedió al matrimonio Torres-Remedios el derecho de opción de compra sobre un apartamento de su propiedad ubicado en el condominio Mirsonia en el municipio de San Juan. Según el matrimonio Torres-Remedios, el término establecido en el Contrato de Opción para ejercer el derecho de opción a compra era de un (1) año y vencía el 29 de julio de 2021. El matrimonio Torres-Remedios alegó que, el 8 de mayo de 2021, le notificó al matrimonio Parrilla-Yriarte su intención de ejercer dicho derecho y que, en respuesta, este se negó a venderle el apartamento debido a que el término para ejercer el derecho de opción había vencido el 29 de abril de 2021, sin que el matrimonio Torres-Remedios hubiera notificado su intención de ejercerlo. Ello, basado en que la Cláusula Nueve del Contrato de Opción establecía que el optante debía ejercer el derecho de opción no menos de noventa (90) días antes de que expirara la opción.

---

[1] Apéndice, *Petición de Certiorari KLCE202201179*, a las págs. 22-47.

En la demanda, el matrimonio Torres-Remedios solicitó como remedio que se emitiera una orden provisional prohibiéndole al matrimonio Parrilla-Yriarte enajenar la propiedad; y que se le ordenara a dicha parte a otorgar la escritura de compraventa de la propiedad no más tarde del 22 de julio de 2021. Además, solicitó la concesión de una indemnización para resarcir los daños sufridos por el incumplimiento contractual del matrimonio Parrilla-Yriarte.

El 19 de julio de 2021, el TPI emitió y notificó *Orden,* mediante la cual denegó el remedio provisional solicitado por el matrimonio Torres-Remedios en la demanda por no haber adquirido jurisdicción sobre el matrimonio Parrilla-Yriarte.[2]

El 20 de julio de 2021, el matrimonio Parrilla-Yriarte presentó *Moción de Desestimación.* En síntesis, el matrimonio Parrilla-Yriarte solicitó la desestimación de la demanda presentada en su contra bajo el fundamento de que el matrimonio Torres-Remedios había admitido que el término para ejercer el derecho de opción a compra había vencido sin que hubiera notificado su intención de ejercerlo, por lo que no se justificaba el remedio solicitado en su demanda.[3]

Por otra parte, el 30 de julio de 2021, el matrimonio Parrilla-Yriarte presentó demanda sobre desahucio en precario en contra del matrimonio Torres-Remedios bajo el Caso Núm. **SJ2021CV04802**.[4] En síntesis, el matrimonio Parrilla-Yriarte alegó que el matrimonio Torres-Remedios detentaba ilegal y precariamente la posesión de la propiedad, sin tener derecho a ello y sin pagar canon o merced alguna, por lo que solicitó que se ordenara su lanzamiento.

---

[2] Apéndice, *Petición de Certiorari,* a la pág. 53.

[3] Apéndice, *Petición de Certiorari,* a las págs. 54-60.

[4] En el Caso Núm. **SJ2021CV04802**, el 20 de septiembre de 2021, el matrimonio Parrilla-Yriarte presentó *Demanda Enmendada* a fin de incluir una causa de acción reclamando los cánones de arrendamiento adeudados; y, el 29 de septiembre de 2021, el matrimonio Torres-Remedios presentó *Contestación a Demanda Enmendada.* Apéndice, *Petición de Certiorari,* a las págs. 76-80 y 88-91, respectivamente.

El 5 de agosto de 2021, el matrimonio Torres-Remedios presentó *Oposición a Moción de Desestimación y Réplica a Oposición de Memorando de Derecho*.[5]

El 24 de septiembre de 2021, notificada el 27 de septiembre de 2021, el TPI emitió *Resolución* en el Caso Núm. SJ2021CV04802, mediante la cual ordenó la **consolidación** de los casos **SJ2021CV04802** y **SJ2021CV04410**.[6]

Luego de varios trámites procesales, el 26 de octubre de 2021, el matrimonio Parrilla-Yriarte presentó *Moción de Sentencia Sumaria*.[7] En síntesis, el matrimonio Parrilla-Yriarte alegó que no existía una controversial sustancial de hechos materiales para que el tribunal dictara sentencia sumariamente a su favor sobre la totalidad de la reclamación solicitada en la demanda de desahucio presentada en el Caso Núm. SJ2021CV04802. Alegó que la Cláusula Novena del Contrato de Opción establecía que el optante debía ejercer el derecho de opción no menos de noventa (90) días antes de que venciera el término de un (1) año; que dicho término había vencido el 29 de abril de 2021, sin que el matrimonio Torres-Remedios hubiera notificado su intención de ejercerlo; y que estos detentaba ilegal y precariamente la posesión de la propiedad, sin tener derecho a ello y sin pagar canon o merced alguna, por lo que procedía su lanzamiento. Además, el matrimonio Parrilla-Yriarte solicitó la concesión de costas y gastos y la imposición de honorarios de abogado por temeridad.

El 17 de noviembre de 2021, el matrimonio Torres-Remedios presentó *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial*, en la cual se opuso a la solicitud del matrimonio Parrilla-Yriarte y, en cambio, solicitó que se dictara

---

[5] Apéndice, *Petición de Certiorari*, a las págs. 61-64.
[6] Apéndice, *Petición de Certiorari*, a las págs. 83-87.
[7] Apéndice, *Petición de Certiorari*, a las págs. 101-136.

sentencia sumaria parcial a su favor sobre la causa de acción de cumplimiento específico solicitada en la demanda presentada en el Caso Núm. SJ2021CV04410.[8] En síntesis, el matrimonio Torres-Remedios argumentó que el término de noventa (90) días se estableció en el Contrato de Opción de manera que se pudieran comenzar y culminar los trámites del préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente, pero que el término para ejercer el derecho de opción era de un (1) año y vencía el 29 de julio de 2021. El matrimonio Torres-Remedios añadió que cumplió con su parte del contrato al manifestar su intención de ejercer el derecho de opción y obtener el financiamiento necesario para comprar la propiedad dentro del término de un (1) año que vencía el 29 de julio de 2021, por lo que procedía que se ordenara al matrimonio Parrilla-Yriarte otorgar la escritura de compraventa de la propiedad. Finalmente, en cuanto a la alegada admisión en la cual el matrimonio Parrilla Yriarte basó la *Moción de Desestimación* presentada el 20 de julio de 2021, el matrimonio Torres-Remedios alegó que ello no constituyó una admisión, sino una interpretación del contrato que hizo sin contar con el conocimiento legal necesario y que lo pertinente para dilucidar la controversia del presente caso era la intención de las partes al momento de contratar.

El 14 de diciembre de 2021, el matrimonio Parrilla-Yriarte presentó *Oposición a Solicitud de Sentencia Sumaria Parcial.*[9]

Luego de varios trámites procesales, el TPI dictó la *Sentencia Parcial* apelada.[10] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación* y la *Moción de Sentencia Sumaria* presentadas el 20 de julio de 2021 y el 26 de octubre de 2021,

---

[8] Apéndice, *Petición de Certiorari*, a las págs. 137-162.
[9] Apéndice, *Petición de Certiorari*, a las págs. 163-172.
[10] Apéndice, *Apelación*, a las págs. 1A-15A.

respectivamente, por el matrimonio Parrilla-Yriarte, y Ha Lugar la *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial* presentada el 17 de noviembre de 2021 por el matrimonio Torres-Remedios. En consecuencia, se decretó el archivo de la causa de acción de desahucio presentada bajo el Caso Núm. SJ2021CV04802; se ordenó al matrimonio Parrilla-Yriarta a otorgar la escritura de compraventa de la propiedad; y se señaló una vista evidenciaria para atender la restante causa de acción de daños por incumplimiento contractual presentada por el matrimonio Torres-Remedios en contra del matrimonio Parrilla-Yriarta. En su dictamen, el TPI formuló siete (7) determinaciones de hecho probados, a base de las cuales concluyó y resolvió lo siguiente:

> "[N]o hay controversia sobre el hecho de que ambas partes suscribieron el contrato de arrendamiento. Tampoco hay controversia sobre el contenido de este. Solo resta determinar si en efecto el Matrimonio Torres Carbone ejerció, conforme a los términos del contrato de arrendamiento, el derecho de opción a compra para el Apartamento 201 en el Condominio Mirsonia. De entrada, reconocemos que surge del contrato de arrendamiento que el término para ejercer la opción y suscribir el contrato de compraventa era en o antes del 29 de julio de 2021. Además, tampoco hay controversia que el Matrimonio Torres Carbone le notificó mediante correo electrónico a los Parrilla Yriarte el 8 de mayo de 2021 que deseaban ejercer el referido derecho de opción a compra.

> Según adelantado, la cláusula nueve establece que "el término de opción vencerá el 29 de julio de 2021." Continúa dicho inciso indicando que "[e]l vencimiento de la opción es tanto para que "EL ARRENDATARIO-COMPRADOR" ejerza el derecho de compra como para que se otorgue la correspondiente escritura de compraventa". El contrato es por tanto claro que el término de vencimiento era el 29 de julio de 2021, como señala el Matrimonio Torres Carbone en su solicitud. Con relación a este planteamiento, los Parrilla Yriarte destacan otra sección de la cláusula, la cual, según estos, impuso una condición de notificación al ejercicio de la opción. La sección aludida por los Parrilla Yriarte dispone que:

> [S]e acuerda que "EL ARRENDATARIO-COMPRADOR" deberá comunicar por escrito a "EL ARRENDADOR-VENDEDOR" que ejerce su derecho de opción con no menos de 90 días antes de que expire la opción de manera que pueda comenzar y culminar los trámites del

préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente.

A la luz del citado lenguaje, los Parrilla Yriarte sostienen que era un requisito la notificación con no menos de 90 días por escrito para que el Matrimonio Torres Carbone pudiera ejercer la opción a compra.

Aun cuando las partes acordaron a dicho lenguaje, entendemos que con la notificación el 8 de mayo de 2021, el Matrimonio Torres Carbone cumplió con el término para ejercer la opción de compra. A nuestro juicio, este término de noventa días era uno directivo, con el fin de enmarcar las gestiones dirigidas a materializar la compraventa con tiempo suficiente para comenzar y terminar los trámites pertinentes, ya sea de financiamiento o cualquier otro para que, luego de notificar la intención de compra, se pudiese realizar la referida compraventa en o antes del 29 de julio de 2021.

La lectura en la totalidad del contrato de arrendamiento a su vez apoya dicha interpretación. Por ejemplo, en su cláusula diez dispone que el "ARRENDATARIO-COMPRADOR" podrá ejercer su derecho de Opción en cualquier momento durante la vigencia del contrato de arrendamiento, inclusive antes de su vencimiento...". Como antes reseñado, no hay controversia de que el término del arrendamiento vencía el 29 de julio de 2021. Incluso, la cláusula once, haciendo referencia al caso en el [sic.] "el arrendatario-comprador", es decir el Matrimonio Torres Carbone, no ejerciera su derecho de opción, reitera que el término del vencimiento de la opción era el 29 de julio de 2021." La totalidad del lenguaje apunta a la interpretación del Matrimonio Torres Carbone de que ejercieron su derecho a opción a compra, puesto que notificaron a los Parrilla Yriarte su intención de comprarlo con anterioridad al 29 de julio de 2021.

En consideración con la cláusula nueve, además de las porciones citadas del contrato de arrendamiento, es evidente que el término para ejercer la opción era hasta el 29 de julio de 2021. Dicho de otra forma, el Matrimonio Torres Carbone tenía hasta tal fecha para ejercerla. Se puede por tanto colegir que el correo electrónico enviado por el Matrimonio Torres Carbone el [8] de mayo de 2021 constituyó un acto que activó tal derecho, independientemente de si no se dio dentro de los noventa días anterior, pues el término para ejercer la opción vencía el 29 de julio de 2021. Como antes indicado, dicho término era uno directivo y no alteró la fecha de vencimiento de la opción a compra."[11] (énfasis en el original omitido).

Inconforme con dicha determinación, el matrimonio Parrilla-

Yriarta acudió ante nos el 22 de diciembre de 2022 mediante el

---

[11] *Íd.*, págs. 13A-14A.

presente recurso de *Apelación,* en el cual señala los errores siguientes:

> Erró el Tribunal de Primera Instancia al, en su dictamen sumario, interpretar los términos acordados sobre cómo y cuándo los apelados debían ejercer la opción de compraventa de manera incompatible con la cláusula que rige esta acción.

> Erró el Tribunal de Primera Instancia al, en su dictamen sumario, ignorar el reconocimiento expreso de los apelados en cuanto a la expiración del término para ejercer la opción.

> Erró el Tribunal de Primera Instancia al, en su dictamen sumario, caracterizar el plazo para ejercer la opción de compraventa como un término directivo y no como un término de caducidad.

> Erró el Tribunal de Primera Instancia al negarse a emitir el dictamen sumario solicitado por los apelantes y no ordenar el desahucio de los apelados de la propiedad que, sin derecho, se mantienen ocupando en exclusión de sus legítimos dueños.

> En la alternativa, erró el Tribunal de Primera Instancia al emitir el dictamen sumario a favor de los apelados cuando existen controversias de hechos medulares que ameritan dilucidación mediante una vista evidenciaria.

El 16 de febrero de 2023, el matrimonio Torres-Remedios presentó *Oposición a Apelación.*

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**-II-**

**A.**

La moción de sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto los hechos materiales del caso, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. *Alicea Pérez v. Seguros Múltiples,* 2022 TSPR 86 (2022); *León Torres v. Rivera Lebrón,* 204 DPR 20 (2020); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100

(2015). *Oriental Bank & Trust v. Perapi S.E*, 192 DPR 7 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010).

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria está regido por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En esencia, esta Regla dispone que para emitir una adjudicación de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y alguna otra evidencia, surja que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor de la parte promovente. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e). Véanse, además, *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 430; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).

Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Meléndez González et al. v. M. Cuebas*, supra, págs. 109-110; *Const. José Carro v. Mun. Dorado*, supra, pág. 129; *Nieves Díaz v. González Massas*, supra, pág. 848.

La parte que promueve la moción de sentencia sumaria debe establecer su derecho con claridad y, además, como vimos, debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013); *Nieves Díaz v. González Massas*, supra, pág. 848; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). El Tribunal Supremo ha establecido que un hecho material es aquel que puede

afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010), citando a J.A. Cuevas Segarra, T*ratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Mun. de Añasco v. ASES et al.*, supra, págs. 326-327. La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, se refiere a estos hechos como "esenciales y pertinentes".

La controversia en cuanto al hecho material tiene que ser real, por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110; *Ramos Pérez v. Univisión*, supra, págs. 213-214. La duda debe ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Íd.*

Por otro lado, la Regla 36 de Procedimiento Civil, *supra*, también regula de manera específica los requisitos de forma que debe cumplir la parte promovente de la moción de sentencia sumaria, así como la parte que se opone a esta. En cuanto al listado de hechos no controvertidos que la parte promovente debe exponer en su solicitud, esta tiene que desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada y otra prueba admisible que lo apoya. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Íd.*

Vemos que, según nuestro ordenamiento procesal civil, se les exige tanto al promovente como al opositor de una moción de

sentencia sumaria que cumplan con unos requisitos de forma específicos para que pueda considerarse su solicitud. El incumplimiento con estos requisitos tiene repercusiones distintas para cada parte.

De un lado, si el promovente de la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. *Meléndez González et al. v. M. Cuebas*, supra, pág. 111. A *contrario sensu*, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en Derecho. *Íd.* Incluso, si la parte opositora se aparta de las directrices consignadas en esta Regla el tribunal podrá no tomar en consideración su intento de impugnación de los hechos ofrecidos por el promovente. *Íd.*; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

En resumen, en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, el Tribunal Supremo señaló que el ordenamiento procesal civil de nuestra jurisdicción:

> "coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso, el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación." *Íd.*, págs. 433-434.

En cuanto al estándar aplicable al Tribunal de Apelaciones al momento de revisar las determinaciones del foro primario de conceder o denegar mociones de sentencia sumaria, se ha establecido que debemos realizar una evaluación *de novo* de la controversia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 116. En ese análisis estamos facultados a: considerar los documentos que se presentaron ante el foro primario; determinar si

existe o no alguna controversia genuina de hechos materiales; y revisar si se aplicó el Derecho de forma correcta. *Íd.*, Véase, también, *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

**B.**

En Puerto Rico rige el principio de la libertad de contratación o autonomía de la voluntad, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. Artículo 1207 del Código Civil, 31 LPRA sec. 3372;[12] *Feliciano v. Luxury Hotels Int'l of P.R. Inc.*, 2022 TSPR 133, pág. 22; *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713 (2001); *Trinidad v. Chade*, 153 DPR 280 (2001); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994); *Plaza del Rey, Inc. v. Registrador*, 133 DPR 188 (1993); *Casiano, Jr. v. Borintex Mfg. Corp.*, 133 DPR 127 (1993).

A partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA sec. 3375; *Trinidad v. Chade*, supra. De esta manera, cuando un contrato es legal, válido y carente de vicios del consentimiento, el mismo constituye la ley entre las partes y debe cumplirse a tenor de este. Artículo 1044 del Código Civil, 31 LPRA sec. 2994; *Feliciano v. Luxury Hotels Int'l of P.R. Inc.*, supra; *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 593 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345 (1984). Es por ello, que el Artículo 1054 del Código Civil, 31 LPRA sec. 3018, sujeta a aquellos que de alguna manera contravengan sus obligaciones a la

---

[12] El *"Código Civil de Puerto Rico"*, Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

indemnización de los daños y perjuicios causados. Bajo dicho supuesto, todo incumplimiento contractual dará lugar a un resarcimiento. *Álvarez v. Rivera*, supra, pág. 18.

En lo pertinente al caso ante nuestra consideración, el contrato de opción es "el convenio por el cual una parte (llamada optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal." *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002), citando a *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571 (1989). Los requisitos esenciales del contrato de opción son: la concesión por una parte a la otra de la facultad de decidir sobre la celebración del contrato por el cual se opta, de modo exclusivo, por plazo cierto y sin otra condición que el propio juicio del optante. *Íd.*, citando a J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Madrid, Ed. Reus, 14ta ed., 1988, T. IV, pág. 50.

El referido contrato otorga al optante la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. *Matos Lorenzo v. Rivera Tirado*, 181 DPR 835, 841 (2011). Por ello, "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". *Íd.*, citando a J. Puig Brutau, *Fundamentos de Derecho Civil, Barcelona*, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 50. Asimismo, el optatario viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 250; Castán Tobeñas, *op. cit.*, págs. 54-55.

Como norma general, el optante puede ejercer su derecho de opción simplemente notificando al optatario su voluntad de perfeccionar el convenio por el cual optó. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 246. Véase, además, Puig Brutau, op. cit.,

pág. 57. No obstante, dicho derecho queda extinguido con su renuncia o si transcurre el plazo concedido sin que el optante ejerza la opción —se estima entonces caducado. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 249.

De otra parte, si la opción se ejerce dentro del plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado según haya sido previamente delimitado. *Íd.* Desde entonces, las partes vienen obligadas a satisfacer sus respectivas prestaciones bajo el contrato definitivo. Véase, *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 809-810 (1975), citando la sentencia del Tribunal Supremo de España de 23 de marzo de 1945.

El Tribunal Supremo ha reconocido que las normas generales sobre las obligaciones y los contratos son aplicables al contrato de opción. *Matos Lorenzo v. Rivera Tirado*, supra, 842-843; *Rosa Valentín v. Vázquez Lozada*, supra, pág. 804; *Pérez v. Sampedro*, 86 DPR 526, 529 (1962). Véase, además, Puig Brutau, *op. cit.*, pág. 49. Por ello, rige aquí también el principio de libertad de contratación o autonomía de la voluntad contractual antes mencionado, bajo el cual los contratantes pueden pactar las cláusulas y condiciones que estimen convenientes mientras no contravengan las leyes, la moral ni el orden público. Artículo 1207 del Código Civil, *supra*; *Álvarez v. Rivera*, supra, pág. 17; *Vélez v. Izquierdo*, 162 DPR 88, 98 (2004); *S.L.G. Irizarry v. S.L.G. García*; supra, págs. 724-25; *Trinidad v. Chade*, supra, pág. 289; *Arthur Young & Co. v. Vega III*, supra, págs. 169-170; *Plaza del Rey, Inc. v. Registrador*, supra, págs. 192-193. Una vez las partes prestan su consentimiento, quedan entonces vinculadas por los términos del contrato, siendo esta la ley entre las partes. Artículo 1044 del Código Civil, 31 LPRA sec. 2994. *Constructora Bauzá, Inc. v. García López*, supra, pág. 593; *Cervecería Corona v. Commonwealth Ins. Co.,* supra.

Por otra parte, el Código Civil establece que cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no debe recurrirse a reglas de interpretación para determinar la intención de los contratantes. Artículo 1233 del Código Civil, 31 LPRA sec. 3471; *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Trinidad v. Chade, supra*, pág. 289. Se entiende por términos claros aquellos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, y sin necesitar para su comprensión, de razonamientos o demostraciones susceptibles a impugnación. *Sucn. Ramírez v. Tribunal Superior*, 81 DPR 357, 361 (1959). Por ende, cuando las partes reglamentan con intensidad la relación jurídica que han creado contractualmente, existirán menos lagunas que tendrán que ser atendidas por las reglas de interpretación del Código Civil. J.R. Vélez Torres, *Curso de Derecho Civil, Derecho de Contratos*, Puerto Rico, Ed. Revista Jurídica, Facultad de Derecho Universidad Interamericana, 1990, T. III, Vol. II, pág. 89.

Sin embargo, en ocasiones, el texto del contrato no permite por sí solo una comprensión única de lo acordado, por lo cual se hace necesaria una labor interpretativa por parte de los Tribunales para auscultar la verdadera y común intención de los contratantes. *Merle v. West Bend Co.,* 97 DPR 403 (1969). La intención puede demostrarse por todos los medios. Por lo que el juzgador debe examinar todas las circunstancias concurrentes al otorgamiento del contrato para adjudicar la intención de las partes, incluyendo los actos anteriores, coetáneos o posteriores al otorgamiento del contrato. Artículo 1234 del Código Civil, 31 LPRA sec. 3472; *Marina Industrial, Inc., v. Brown Boveri Corp.,* 114 DPR 64, 69 (1983); *Cooperativa La Sagrada Familia v. Castillo,* 107 DPR 405, 417 (1978); *Hoffman v. Cuadrado,* 14 DPR 590 (1908).

El Código Civil dispone que, "[c]ualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Artículo 1235 del Código Civil, 31 LPRA sec. 3473. Cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse el más adecuado para que produzca efecto. Artículo 1236 del Código Civil, 31 LPRA sec. 3474. Además, las cláusulas de los contratos deberán interpretarse las unas con las otras, atribuyéndole a las dudosas el sentido que resulte del conjunto de todas. Artículo 1237 del Código Civil, 31 LPRA sec. 3475. Sobre esto, el Tribunal Supremo ha expresado que al igual que en el caso de un estatuto, los términos de un contrato deben leerse conjuntamente y armonizarse para determinar la verdadera intención de las partes. *Caballero v. Kogan*, 73 DPR 666, 674 (1952). Finalmente, la interpretación contractual tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. *SLG Irrizary v. SLG García, supra*, pág. 727.

Los tribunales tienen la facultad y el deber de velar por el cumplimiento de los contratos. Por lo tanto, no debemos relevar a una parte del cumplimiento de su obligación contractual, cuando el contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 610, 627 (1997).

**-III-**

En su recurso de *Apelación*, el matrimonio Parrilla-Yriarta señala, en esencia, que erró el TPI al determinar que el matrimonio Torres-Remedios había ejercido oportunamente el derecho de opción a compra. Alega que el término para ejercer dicho derecho venció el 29 de abril de 2021, sin que el matrimonio Torres-Remedios hubiera notificado su intención de ejercerlo. Argumenta que la Cláusula Nueve del Contrato de Opción establecía que el matrimonio Torres-

Remedios debía ejerce el derecho de opción no menos de noventa (90) días antes de que venciera el término de un (1) año que vencía el 29 de julio de 2021. Por su parte, el matrimonio Torres-Remedios sostiene en su alegato en oposición que dicho término de noventa (90) días se estableció en el Contrato de Opción de manera que se pudieran comenzar y culminar los trámites del préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente, pero que el término para ejercer el derecho de opción pactado era de un (1) año y vencía el 29 de julio de 2021.

En el dictamen apelado, el TPI formuló una serie de determinaciones de hechos probados y, a base de estos, concluyó que no existía una controversia sustancial de hechos esenciales y pertinentes, por lo que restaba aplicar el derecho. Analizado el Contrato de Opción, el TPI interpretó que el término para ejercer el derecho de opción de compra pactado era de un (1) año y vencía el 29 de julio de 2021. Finalmente, dicho foro concluyó que el matrimonio Torres-Remedios había ejercido el derecho de opción de compra oportunamente al notificarle el 8 de mayo de 2021 al matrimonio Parrilla-Yriarte su intención de ejercerlo.

Analizada *de novo* la moción de sentencia sumaria y su oposición, así como la determinación del dictamen apelado, acogemos las determinaciones de hechos formuladas por el TPI por entender que estas están sustentadas en la prueba presentada por las partes. La controversia objeto del presente recurso es muy precisa. Nos corresponde determinar cuándo vencía el término para ejercer el derecho de opción de compra, según lo establecido en el Contrato de Opción suscrito entre las partes. Para lograr esto, debemos llevar a cabo un ejercicio de hermenéutica e interpretación contractual.

Como expusimos, las cláusulas de los contratos deberán interpretarse las unas con las otras, atribuyéndole a las dudosas el

sentido que resulte del conjunto de todas. Artículo 1237 del Código Civil, *supra.* Los términos de un contrato deben leerse conjuntamente y armonizarse para determinar la verdadera intención de las partes. *Caballero v. Kogan,* supra, pág. 674.

En el presente caso, entre las condiciones del Contrato de Opción, las partes pactaron lo siguiente:

> **"NUEVE:** <u>OPCIÓN DE COMPRAVENTA</u>: "El ARRENDATARIO COMPRADOR" entrega en este acto a "El ARRENDADOR-VENDEDOR" un depósito por la suma de un dólar ($1.00) en calidad de Opción. En virtud de dicho depósito, "EL ARRENDADOR-VENDEDOR" le otorga y concede a "EL ARRENDATARIO COMPRADOR" un derecho exclusivo de Opción de Compraventa sobre la propiedad descrita en el Apartado Primero de este Contrato **por el término de doce (12) meses. El término de Opción vencerá el día 29 de julio de 2021. El vencimiento de la opción es tanto para que "EL ARRENDATARIO-COMPRADOR" ejerza el derecho de compra como para que se otorgue la correspondiente escritura de compraventa. Por lo tanto, se acuerda que "EL ARRENDATARIO-COMPRADOR" deberá[13] comunicar por escrito a "EL ARRENDADOR-VENDEDOR" que ejerce su derecho de opción con no menos de 90 días antes de que expire la opción de manera que pueda comenzar y culminar los trámites del préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente.** […]
>
> **DIEZ:** PRECIO Y GASTOS DE LA COMPRAVENTA: Las partes han acordado que "El ARRENDATARIO-COMPRADOR" **podrá ejercer su derecho de Opción en cualquier momento durante la vigencia del contrato de arrendamiento, inclusive antes de su vencimiento.** […]
>
> **ONCE:** Las Partes acuerdan que en la eventualidad de que, **al vencimiento de la Opción, el 29 de julio de 2021, "El ARRENDATARIO-COMPRADOR" no haya ejercido su derecho de opción y otorgado la correspondiente escritura de compraventa, "EL ARRENDADOR-VENDEDOR" podrá retener para sí el depósito entregado por tal concepto y ofrecerá la**

---

[13] En *Consejo Arqueológico v. Mun. Barceloneta*, 168 DPR 215, 227 (2006), el Tribunal Supremo explicó lo siguiente:

> "[A]unque la regla general es que los términos permisibles como "podrá" deben interpretarse como concediendo discreción y que los términos mandatarios como "deberá" deben interpretarse como que ordenan algo de forma concluyente, --e.g., *Capó v. A. Hartman & Cia*, 57 D.P.R. 196, 200 (1940), *Pueblo v. Díaz Torres*, 89 D.P.R. 720, 732 (1963), *Boneta ex parte*, 39 D.P.R. 154, 166 (1929), *Srio. de Justicia v. Tribunal Superior*, 95 D.P.R. 158, 161 (1967)--- **hemos dispuesto en el pasado que cabe interpretar a los mismos indistintamente si de esa forma se logra cumplir con el propósito del estatuto.** *Espasas Dairy Inc. v. JSM*, 94 D.P.R. 816, 826 (1967)." (énfasis suplido).

**propiedad en venta a terceros interesados.** "El ARRENDADOR-VENDEDOR", de no ejercerse la compraventa a la fecha estipulada, y en caso de que las partes negocien nuevos acuerdos, no estará obligado, a honrar el precio estipulado de compraventa, canon de arrendamiento y/o clausulas y condiciones estipuladas en este contrato.

Asimismo, las Partes convienen que de no efectuarse la compraventa por abandono del contrato de arrendamiento antes de la expiración de su término, "EL ARRENDADOR-VENDEDOR" retendrá para sí el balance de los cánones de arrendamiento prepagados.

[…]."[14]

Analizado el Contrato de Opción a la luz del derecho expuesto, concluimos que en este –específicamente en las cláusulas antes citadas— se estableció claramente que el término para ejercer el derecho de opción de compra vencía el 29 de julio de 2021. Coincidimos con el análisis del TPI en cuanto que el término de noventa (90) días establecido en la Cláusula Nueve del Contrato de Opción es uno directivo. Este refleja la mera aspiración de las partes de que el ejercicio de opción se llevara a cabo **preferiblemente** dentro de este plazo, "de manera que pueda[n] comenzar y culminar los trámites del préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente."[15] Tampoco tiene méritos la alegación del matrimonio Parilla-Yriarte en cuanto a que el matrimonio Torres-Remedios admitió que el término para ejercer la opción había vencido. A nuestro juicio, los términos de este contrato son claros y no dejan duda sobre la intención de las partes al contratar, por lo que se estará al sentido literal de sus cláusulas.

No existe controversia con respecto a que, el 8 de mayo de 2021, el matrimonio Torres-Remedios le notificó al matrimonio Parrilla-Yriarte su intención de ejercer el derecho de opción de compra. Por lo tanto, habiéndolo ejercido oportunamente dentro del término de un (1) año establecido en el contrato, el matrimonio

---

[14] Apéndice, *Petición de Certiorari*, a las págs. 33-41.
[15] *Íd.*, pág. 33.

Parrilla-Yriarte estaba obligado a celebrar el contrato de compraventa del apartamento.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia Parcial* apelada. La Juez Barresi Ramos disiente con opinión escrita.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **JOSÉ ALBERTO TORRES MONLLOR, MILDRED REMEDIOS CARBONE Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS** <br> DEMANDANTE(S)-APELADA(S) <br><br> V. <br><br> **GUILLERMO RAPHAEL PARRILLA VÉLEZ Y MARÍA VANESSA YRIARTE PÉREZ, XYZ** <br> DEMANDADA(S)-APELANTE(S) | **KLAN202201053** | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan** <br><br> Caso Civil Núm.: **SJ2021CV04410** Consolidado **SJ2021CV04802** (Sala 504) <br><br> Sobre: Cumplimiento Específico de Contrato de Opción y Urgente Solicitud de Remedios Provisionales |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

**VOTO DISIDENTE**

En San Juan, Puerto Rico, hoy día 31 de mayo de 2023.

Por entender que procede revocar la *Sentencia Parcial* apelada, disentimos respetuosamente de la opinión mayoritaria por las razones que expondremos a continuación.

**- I -**

Encontramos pertinente a la presente controversia los siguientes hechos e incidentes procesales:

El 26 de julio de 2020, los matrimonios **Parilla–Yriarte** y **Torres–Remedios** suscribieron un *Contrato de Arrendamiento con Opción de Compraventa* (*Contrato de Arrendamiento*).[16]  En dicho *Contrato de Arrendamiento*, entre otras cosas, se concedió una opción de compraventa. En lo pertinente, la cláusula NUEVE (9) del *Contrato de Arrendamiento* en

---

[16] Véase Apéndice de la *Petición de Certiorari KLCE202201179,* págs. 29- 44.

controversia expresa:

> [e]n virtud de dicho depósito, "EL ARRENDADOR-VENDEDOR" le otorga y concede a "EL ARRENDATARIO-COMPRADOR" un derecho exclusivo de Opción de Compraventa sobre la propiedad descrita en el Apartado Primero de este Contrato por el término de doce (12) meses. El término de Opción vencerá el día 29 de julio de 2021. **El vencimiento de la opción es tanto para que "EL ARRENDATARIO–COMPRADOR" ejerza el derecho de compra como para que se otorgue la correspondiente escritura de compraventa. Por lo tanto, acuerda que "EL ARRENDATARIO-COMPRADOR" deberá comunicar por escrito al "EL ARRENDADOR–VENDEDOR" que ejerce su derecho de opción con no menos de 90 días antes de que expire la opción de manera que pueda comenzar y culminar los trámites del préstamo hipotecario o las gestiones necesarias para adquirir la propiedad oportunamente**.[17] (énfasis nuestro)

Posteriormente, el 8 de mayo de 2021, el matrimonio **Torres–Remedios** remitió un correo electrónico manifestando:

> "deseamos ejercer la opción de compra de Mirsonia 201 bajo el contrato de Arrendamiento con Opción de Compra Venta firmado Julio 26, 2020. Estamos empezando a tramitar la gestión del préstamo hipotecario y **nos dimos cuenta durante este proceso que tenemos que ejercer la opción de compra 90 días antes del 7/29/2021. Queríamos confirmar por este correo electrónico que el Arrendador/Vendedor está dispuesto a aceptar la opción ya que estamos 8 días tardes**".[18] (énfasis nuestro)

Así las cosas, el 18 de mayo de 2021, el matrimonio **Parilla–Yriarte** tramitó un correo electrónico informando:

> "que la opción de compra no se comunicó a tiempo. Debería haber sido comunicada por escrito como último día el 29 de abril del 2021 y se notificó el día 8 de mayo del 2021 ya pasado el tiempo estipulado en la cl[á]usula 9 del contrato de compraventa, donde se estipula que debía haber sido comunicado por escrito con no menos de 90 días".[19]

Luego, el 14 de julio de 2021, el matrimonio **Torres–Remedios** instó una *Demanda Jurada y Solicitud Urgente de Orden Ex Parte de Prohibición de Enajenar y Solicitud de No Hacer* en la cual manifestó que envió "comunicación a los demandados notificando su ejercicio de la opción e

---

[17] Véase Apéndice de la *Petición de Certiorari KLCE202201179,* pág. 119.
[18] *Id*., pág. 134.
[19] *Id*., pág. 136.

incorrectamente interpretando que dicha notificación era tardía".[20]

El 20 de julio de 2021, el matrimonio **Parilla–Yriarte** presentó una *Moción de Desestimación* aduciendo, entre otras cosas, que la opción debía ejercerse por escrito y con no menos de noventa (90) días antes de que expire la opción; vencieron los noventa (90) días -29 de abril de 2021- sin que el matrimonio **Torres–Remedios** cursara su escrito para activar su derecho a opción; y el matrimonio **Torres–Remedios** había aceptado "que el ejercicio de la opción era tardío".[21]

El 5 de agosto de 2021, el matrimonio **Torres–Remedios** presentó *su Oposición a Moción de Desestimación y Réplica a Oposición a Memorando de Derecho.*[22] En este escrito, alegó que: su "comunicación de 8 de mayo de 2021 no constituye admisión alguna, sino la lectura lega[l] del contrato a esa fecha. Cierta expresión realizada en dicho correo electrónico no equivale a una admisión, pues la intención que es pertinente para la controversia de autos la intención de los contratantes es al momento de la suscripción del contrato, i.e. el 26 de julio de 2020..."[c]uando, como en este caso, los términos de un contrato no son claros, son contradictorios o cuando las palabras dejan dudas sobre la intención de los contratantes, el juzgador de hechos debe examinar todas las circunstancias concurrentes al otorgamiento del contrato".[23]

El día 20 de septiembre de 2021, el matrimonio **Torres–Remedios** presentó una *Demanda Enmendada*.[24] Uno días después, el 29 de septiembre de 2021, el matrimonio **Parilla–Yriarte** presentó su *Contestación a Demanda Enmendada*.[25]

El 26 de octubre de 2021, el matrimonio **Parilla–Yriarte** presentó una *Moción de Sentencia Sumaria*.[26] Más tarde, el 17 de noviembre de 2021, el matrimonio **Torres–Remedios** presentó una *Oposición a Moción de*

---

[20] *Id*., págs. 22- 28.
[21] Véase Apéndice de la *Petición de Certiorari KLCE202201179,* págs. 54- 60.
[22] *Id*., págs. 54 – 60.
[23] *Id*., págs. 65 – 75.
[24] *Id*., págs. 76- 80.
[25] *Id*., págs. 88- 91.
[26] *Id*., págs. 101 – 136.

*Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial*.[27]

Después, el 22 de noviembre de 2022, el foro apelado decretó la *Sentëncia Parcial* apelada.

## - II –

El Artículo 1206 del Código Civil de Puerto Rico de 1930 dispone: "[e]l *contrato* existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[28] Así las cosas, "los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público".[29]

En nuestro ordenamiento jurídico existen diversos tipos de *contratos*. Entre ellos, se encuentra el *contrato de opción* que es unilateral. El *contrato de opción* se ha definido como un evento o un convenio por el cual una parte, llamada concedente, promitente u optatario, concede a la otra, llamada optante, por un tiempo fijo y en determinadas condiciones, la facultad que se deja exclusivamente a su arbitrio de decidir respecto a la celebración de un contrato principal.[30] Así las cosas, de este contrato nace un derecho que le confiere al optante la facultad de decidir, a su arbitrio, y dentro de un plazo cierto, si celebra el contrato por el que se opta.[31] Son requisitos esenciales del *contrato de opción*: (1) la concesión por una parte a la otra de la facultad de; (2) decidir sobre la celebración del contrato por el cual se opta, de modo exclusivo; (3) por plazo cierto; y (4) sin otra condición que el propio juicio del optante.[32]

A su vez, cabe destacar que el *derecho de opción* se extingue mediante

---

[27] *Id.*, págs. 137 – 162.

[28] Código Civil de Puerto Rico 1930 Art. 1206, 31 LPRA § 3371. El *Código Civil de Puerto Rico de 1930,* fue derogado y sustituido por el *Código Civil de Puerto Rico de 2020,* conocido como la Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos del caso de autos que originan la presente controversia surgen durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

[29] Código Civil de Puerto Rico 1930 Art. 1207, 31 LPRA § 3372.

[30] *Mayagüez Hilton Corp., v. Betancourt*, 156 DPR 234 (2002).

[31] *P.D.C.M. Associates v. Najul Bez*, 174 DPR 716 (2008). *Véase, además,* J. P. Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Bosch, 1982, Tomo II, Vol. II, págs. 48-49.

[32] *Id.*, pág. 246.

su ejercicio positivo, quedando entonces perfeccionado el contrato aceptado. Igualmente se extingue, sin este efecto positivo, si se deja transcurrir el plazo concedido para optar sin realizar ninguna manifestación, o haciendo alguna que tenga la eficacia de una renuncia del derecho. Por su ejercicio de naturaleza preferente y temporal este contrato no es imaginable sin un plazo para su ejercicio.[33] Es decir, el plazo para el ejercicio de la opción es uno de **caducidad** y puede estar sujeto a determinadas condiciones.[34]

Ahora bien, sobre los *contratos* incide un principio de lealtad al momento de ejercer una interpretación contractual.[35] El norte de la interpretación contractual es determinar cuál fue la real y común intención de las partes.[36] Ciertamente, dicho análisis comienza y concluye con los términos del *contrato*, siempre que éstos sean claros y no dejen duda alguna sobre la susodicha intención.[37]

- III –

En el presente caso, la controversia versa sobre la cláusula NUEVE (9) del *Contrato de Arrendamiento*. Dicha cláusula fue producto de la autonomía de las voluntades de las partes. Resulta menester destacar que los *contratos* se establecen según la libre autonomía de las partes y sus términos son acordados a términos fijos. Así, no puede haber un contrato sin que haya unión de voluntades.[38]

La *Sentencia Sumaria* es un mecanismo procesal extraordinario que tiene el propósito de facilitar una solución justa, rápida y económica de aquellos litigios civiles **que no presentan controversias genuinas de hechos materiales**.[39] Ante ello, procede dictar *sentencia sumaria* si las

---

[33] *Irizarry López v. García Cámara*, 155 DPR 713 (2001).

[34] *Mayagüez Hilton Corp., v. Betancourt*, supra., en la pág. 249; *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796 (1975).

[35] *Municipio de Mayagüez v. Lebron*, 167 DPR 713, 715 (2006).

[36] *Id*., pág. 714. El Artículo 1234 del Código Civil de 1930 expresa: "Para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato". 31 LPRA § 3472.

[37] *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[38] *Amador Parilla v. Concilio*, 150 DPR 571 (2000); *De Jesús González v. AC*, 148 DPR 225, 271 (1999).

[39] *Vera Morales v. Dr. Bravo*, 161 DPR 308, 331 (2004). (énfasis nuestro).

alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material, y además, si el derecho aplicable lo justifica.[40] Así, la duda- sobre la existencia de una controversia- debe ser de tal naturaleza que permita concluir que existe una controversia real y sustancial sobre los hechos relevantes y pertinentes.[41]

En este caso, no existe controversia respecto a la otorgamiento y perfección del contrato entre las partes. Empero, existe controversia en torno a la interpretación de la cláusula novena y los términos establecidos en el mismo.[42] La conducta interpretativa no solo puede y debe hacerse teniendo en cuenta los actos coetáneos y posteriores al contrato, sino igualmente los anteriores, y quizás con mayor razón, pues, en los actos preparatorios puede encontrarse el mejor índice de la voluntad de los interesados. Véase: J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra. ed., Barcelona, Ed. Bosch, 1983, T.II Vol. I., pág. 231.

Nuestro Código Civil de 1930 consagra la *teoría subjetiva* sobre la interpretación de los contratos.[43] Ello obliga al juzgador a indagar o escudriñar sobre la **voluntad real** de las partes. Para ello, debe examinarse las circunstancias anteriores a la contratación (actos preparativos); los coetáneos al momento de otorgamiento del contrato; y los posteriores al acuerdo. Por consiguiente, **no solamente procede aplicar el derecho, sino que resulta necesario la celebración de una audiencia en su fondo para evaluar la prueba y escuchar a las partes para determinar cuál fue**

---

[40] 32 LPRA Ap. V., R. 36; *Lugo Montalvo v. Sol Melia Vacation*, 194 DPR 209, 225 (2015).

[41] *Meléndez González v. M. Cuebas*, 193 DPR 100, 102 (2015).

[42] El matrimonio **Torres-Remedios** alega en el inciso 11 de su *Demanda Enmendada*: "Suscrito el Arrendamiento con Opción y cumplidas todas las prestaciones por los aquí demandantes, el 8 de mayo de 2021, el demandante Torres Monllor envió comunicación a los demandados notificando su ejercicio de la opción e incorrectamente interpretando que dicha notificación era tardía".

[43] El Artículo 1233 del Código Civil de 1930, 31 LPRA sec. 3471, expresa: Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

**la real y común voluntad o intención de las partes**. [énfasis nuestro][44]

Por lo cual, en este caso, el foro primario debió celebrar una audiencia y no resolver la controversia mediante sentencia sumaria.

Por otro lado, un *contrato de opción* está sujeto a término o plazo fijo mediante el cual los otorgantes quedan obligados teniendo el optante una reserva exclusiva del derecho que es objeto de la opción.[45]  Ante ello, no podemos concluir, como el tribunal *a quo*, que el término de noventa (90) días establecido en la cláusula nueve del contrato para comunicar por escrito la intención de ejercer el derecho de opción es uno *directivo*.  A *contrario sensu*, respetuosamente entendemos que **es un plazo de caducidad**, por lo que, estaba tardío o vencido a la fecha en que el matrimonio **Torres–Remedios** comunicó, por escrito, el ejercicio de la opción.[46]  Toda vez que el tiempo convenido para ejercer la opción incluía tanto la notificación escrita con no menos de noventa (90) días antes de 29 de julio de 2021; culminar los tramites del préstamo hipotecario o gestiones necesarias para la adquisición de la propiedad; así como para otorgar la escritura de compraventa.  Ante ello, el matrimonio **Parilla–Yriarte** adujo que el período para desplegar la notificación de la opción esta vencido.  Por tanto, no prestaron su consentimiento a extender la vigencia del plazo de noventa (90) días para notificar, por escrito, el interés de ejercer la opción.

Eileen J. Barresi Ramos<br>
Juez de Apelaciones

---

[44] *Ramos Pérez v. Univisión PR, Inc*., 178 DPR 200, 214 (2010).
[45] *Rosa Valentín v. Vázquez Lozada*, supra., pág. 808.
[46] *Irizarry López v. García Cámara*, supra.